# GEORGE KARNES

*v.*

# THE PEOPLE *ex rel.* J. S. Rumsey.

1. CONSTITUTION — *construction of section 29, of article 6.* The 29th section of article 6 of the constitution, requiring all laws relating to courts to be of general and uniform application, etc., does not apply to the time when the several courts shall meet, nor to the length of their terms.

2. The law authorizing the county court of Cook county to meet on the first Monday in the month, instead of the third Monday, as in other counties, is not in violation of the 29th section of article 6 of the constitution.

3. TAXATION — *day of sale of delinquent lands under acts of 22d and 30th of March,* 1872. A statute was enacted on the 22d of March, 1872, which fixed a day for which a notice of sale of delinquent lands should

be given, which law provided that it should take effect from its pas-
sage, and remain in force until the object intended by it could be attained
under a general law thereafter to be adopted, after which it should cease to
have effect, except so far as proceedings may have been commenced under
it. A general revenue law was adopted on the 30th day of March, 1872,
which took effect July 1, 1872, the provisions of which superseded the act
of March 22, 1872, and by which a different day was fixed as the time to be
named in the notice of sale of delinquent lands. The law of March 30
repealed a large number of previous laws, but did not repeal the law of
March 22: *Held*, that where proceedings for the assessment and collection
of taxes were commenced before the act of March 30 took effect, the act of
March 22d would govern the proceeding until the same should be finally
completed, and the day named in that act was the proper one to be named
as the day of sale, in the notice of sale of delinquent lands.

4. SAME—*collector's report of delinquent lands, when sufficient to show
for what year taxes are due.* A collector's report of delinquent lands,
which shows that he was collector of taxes for a certain year, and that he
had not been able to collect the taxes due on the lands in the report men-
tioned, sufficiently shows for what year the taxes were levied.

5. SAME—*question as to legality of levy can not be raised for the first
time in Supreme Court.* Where a party appears before the county court and
makes specific objections to a judgment for taxes against his land, but none
on account of the levy not being properly made, he tacitly admits the
legality of the levy, and can not be permitted to question it, for the first time,
in the Supreme Court.

APPEAL from the Circuit Court of Cook county; the Hon.
JOHN G. ROGERS, Judge, presiding.

Messrs. HARRISON & WHITEHEAD, for the appellant.

Mr. JOHN M. ROUNTREE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the
Court:

This was an application for an order for the sale of delin-
quent lands in Cook county, and lots in the city of Chicago,
by the county treasurer and *ex-officio* collector, for taxes for
the year 1871. The application was made to the February
term, 1873, of the county court. It was resisted by appellants
on the grounds that, under the law, the court had no right to
convene on the first Monday of the month, but should have

met on the third Monday; because the collector gave notice that he would sell such lands and lots as he might recover an order to sell, on the tenth day of the following March, being the fifth Monday after the commencement of the court at which the application was made, when it is contended that the law required the sale on the fourth Monday thereafter; and because the year for which the tax was due is not named in the collector's report. Notwithstanding the objections, the county court rendered an order for the sale of the land for the taxes due, from which order an appeal was prosecuted to the circuit court, where on a trial the judgment was affirmed; and to reverse that judgment this appeal is prosecuted.

It is urged that under the present constitution, and the general laws of the State, it was illegal for the Cook county court to meet on the first Monday of the month, but should have met on the third. Reference is made to the 29th section of article 6 of the constitution, which provides that "All laws relating to courts shall be general and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts severally, shall be uniform." By the act of the 21st of February, 1859, p. 95, section 11, it is provided that, "The terms of the county courts of this State for the transaction of probate business shall be held on the third Mondays of each month, instead of on the first Mondays of each month." By an act of the General Assembly, adopted February 28th, 1867, (Sess. Laws, p. 71,) it was enacted that terms of the county court of Cook county should be held on the first Monday in each month.

The argument is that the constitution repealed this act of 1867, as it requires all laws relating to courts to be general and of uniform operation, and this act being special, the general law of 1859 must govern, and the court could only convene on the third Monday in each month. Constitutions, like all other laws, must have a reasonable and practical interpretation. To give this language a literal application, would re-

quire all courts in the State to meet on the same day, and the terms to be of the same length. This could not have been intended, because it must have been apparent to the framers of that instrument that such a thing could never be carried into effect. The business in one circuit or one county would be manyfold greater than in another; hence more time would be required in the one than in the other. The circumstances of the people, the difference in climate in different portions of our State, and a variety of circumstances, render it almost if not absolutely necessary that our courts should meet at different times.

It would seem that a literal application of this language would require all laws to apply to the Supreme, circuit, county, city and justices' courts, and to be general and uniform. That all of these courts should be required to meet at the same time, and have terms of the same length, would be an absurdity that we can not attribute to the body of men who framed our fundamental law. Without stopping to inquire to what this language should be confined, we have no hesitation in saying that it can not apply to the time when these several courts shall meet, or the length of their terms. Nor do we see that the remaining language of that section makes such a requirement. This objection is therefore not well taken.

It is next urged the notice of the sale of the lands was to a wrong day, and hence the order of sale could not be legally made. On the 22d of March, 1872, (Sess. Laws 1871-2, p. 667,) an act was adopted relating to the revenue and its collection, which, by the 10th section, provides that the notice of sale of lands for delinquent taxes and assessments be given for the second Monday of the month succeeding the month at which application for judgment is intended to be made, and this notice was so given.

This act provides that it shall take effect and be in force from and after its passage, and shall remain in force until the object intended by the act can be obtained under a general law which should be thereafter adopted, after which it should cease to have effect, except so far as proceedings may have been com-

menced under it.   On the 30th day of March, 1872, a general revenue law was passed (Sess. Laws 1872, p. 1,) which went into effect on the 1st day of the following July, which provides for the collection of State, county, city and other taxes and assessments, and the provisions of which supersede the provisions of the act of the 22d of March.   By the provisions of this general revenue act, it is provided that the collector, in advertising delinquent lands and town lots, shall fix the time of sale for the fourth Monday after the commencement of the term at which the application for judgment is proposed to be made. (See sec. 182, p. 44.)   Thus it will be seen that the times fixed by the two acts are on different days and are repugnant to each other.

But it is urged that, inasmuch as the former act contains the provision that it shall remain in force until all proceedings which were commenced under it should be completed, the latter act did not repeal the former in that respect; that this proceeding was commenced before the latter act went into effect, and that its provisions must control in the manner and as to the time of sale.   The record shows that the proceeding for the reassessment and collection of these taxes had commenced before the general revenue law took effect, and this case is therefore clearly within the saving clause of the act of the 22d of March, 1872.   And, inasmuch as the general revenue law did not, when repealing a large number of previous laws, repeal this, we must infer that it was intended to have operation in all cases where proceedings had been commenced for reassessment and collection of taxes, until the same should be finally completed.

The county board had fixed the February term, 1873, as the time for application for a judgment against delinquent real estate, as they were authorized by the act of March 22, 1872, and, so far as we can see, this proceeding is regular.

We now come to the consideration of the objection that the return of the collector does not show for what year the taxes were levied.

We think this objection is not well taken. The collector filed his report of delinquent lands with this caption:

"A list of lands and town lots reported by Julian S. Rumsey, county treasurer and *ex-officio* collector of Cook county of the revenue of the year A. D. 1871, upon which he has been unable to collect the taxes due thereon; and now this *third* day of February, A. D. 1873, files his petition for a judgment and order of sale against said lands and lots, at the February term, A. D. 1873, of the county court.

Filed January 27, 1873."

Now, this report states that he was county treasurer and *ex-officio* collector of revenue for the year 1871, and that he had been unable to collect the taxes due thereon. This does not state that the taxes are due on these lands for the year 1871 in direct terms, but we think that it does state the fact. It says he was the collector of the revenue for the taxes due on the land. When due? For the year 1871, of course. When was he collector? He says for the year 1871. What taxes was it he was authorized to collect? Those for the year 1871. He does not appear to have been authorized to collect the revenue of any other year, but does for that year. And he says that taxes are due thereon, and that he is unable to collect the same; and no other interpretation can be given the language but that the tax was due for the year 1871, upon the lands which he was seeking to have sold. We think that it does appear that the year for which the taxes were due appears upon his report.

It is objected, but we can hardly suppose with much seriousness, that there is no evidence that the tax was due and unpaid. The collector's return, sworn to, is *prima facie* evidence of the facts stated therein. See act of 22d March, 1872, sec. 10, p. 666. On it judgment is rendered, unless objections are made and shown to exist, which in justice and right require its refusal. When objections are made, the trial is only upon the points thus raised, the presumption being that all else is admitted to be correct and free from objection. In this case numerous objections were interposed, but none that the levy

was not properly made or the taxes justly and legally due. It would be a perversion of justice to permit a party to raise specific objections and contest the rendition of judgment, tacitly admitting the taxes were due, by not denying the fact, and then to raise that question for the first time in this court. But the return under oath was *prima facie* evidence on which to render the judgment, and not having been overcome by proof it is sufficient to sustain the judgment, and it must be affirmed.

*Judgment affirmed.*