E. F. C. KLOKKE

*v.*

JOHN H. P. DODGE.

*Filed at Mt. Vernon January 18, 1882—Rehearing denied May Term, 1882.*

1.  COUNTY COURTS AND PROBATE COURTS—*of their jurisdiction of probate and other matters.*   Section 18 of article 6 of the constitution of 1870, declares that county courts shall have jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law:

2. By section 20 of the same article, it is provided that probate courts, when established under the constitution, shall have original jurisdiction in all matters of probate, the settlement of estates of deceased persons, the appointment of guardians and conservators, and the settlement of their accounts, in all matters relating to apprentices, and in cases of the sales of real estate of deceased persons for the payment of debts.

3. Upon the establishment of a probate court in a particular county, the county court of such county is at once, by operation of law, deprived of its jurisdiction in matters of probate, and in all other matters over which probate courts are given jurisdiction. There can not be concurrent jurisdiction between the two courts in the same county. The jurisdiction of the probate courts is exclusive.

4. Same—*of the extended jurisdiction of county courts in counties in which probate courts are or may be established—constitutionality of the act of 1881.* The act of 1881, "to extend the jurisdiction of county courts in counties in which probate courts are or may be established," provides, "that in all counties in which probate courts are or may hereafter be established, county courts may have concurrent jurisdiction with the circuit court in all cases at law and in equity, except criminal cases where the punishment may be death, or confinement in the penitentiary:" *Held,* the act was unconstitutional, the extended jurisdiction attempted to be thereby conferred being restricted to county courts in certain counties, and not affecting the county courts in all the counties in the State alike, thus being within the inhibition of that clause of sec. 29, art. 6, of the constitution, declaring the jurisdiction "of all courts of the same class or grade" shall be uniform.

5. So it was *held,* the county court of Cook county, that being one of the counties in which a probate court has been established, and in which it was sought to make the act operative, has no jurisdiction of a bill in chancery for relief against certain taxes alleged to have been illegally assessed against the property of the complainant.

Appeal from the County Court of Cook county; the Hon. Mason B. Loomis, Judge, presiding.

Messrs. Condee & Bliss, for the appellant.

Mr. H. T. Gilbert, and Mr. D. B. Snow, for the appellee.

Mr. Justice Scott in announcing the judgment of the Court said:

Section 1 of "An act to extend the jurisdiction of county courts in counties in which probate courts are or may be established," in force July 1, 1881, provides, "that in all

counties in which probate courts are or may hereafter be established, * * * county courts shall have concurrent jurisdiction with the circuit court in all cases at law and in equity, except criminal cases where the punishment may be death, or confinement in the penitentiary." Under the provisions of this statute complainant·exhibited his bill in the county court of Cook county, for relief against certain taxes alleged to have been illegally assessed against his property. The county court entertained the bill and granted the relief. By an agreement of parties, entered of record, an appeal was taken from the decision of the county court to the Supreme Court, sitting in the Southern Grand Division. The only questions discussed in this court have relation to the constitutionality of the section of the statute conferring extended or increased jurisdiction on county courts in counties in which probate courts are or may hereafter be established. Unless the act cited is constitutional, it is not claimed the county court had jurisdiction to entertain the bill.

Section 18, art. 6, of the constitution, which provides for the election of county judges in the several counties of the State, also declares county courts shall be courts of record, and shall have jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided for by general law. Under this section of the constitution county courts were organized in the several counties of the State, having and exercising uniform powers and jurisdiction. Section 20, of the same article of the constitution, confers power on the General Assembly to establish probate courts in counties having a population of over fifty thousand inhabitants. No doubt this power could be exercised by the General Assembly at any time whenever the interests of the inhabitants of the counties embraced in

the class indicated might, in its judgment, require probate courts to be established. Probate courts, when established under the constitution, shall have original jurisdiction in all matters of probate, the settlement of estates of deceased persons, the appointment of guardians and conservators, and the settlement of their accounts, in all matters relating to apprentices, and in cases of the sales of real estate of deceased persons for the payment of debts. It will be noted the constitution makes no provision for giving probate courts, when established in counties having over fifty thousand inhabitants, exclusive original jurisdiction in matters over which they may exercise jurisdiction. All county courts, by the express terms of the constitution, (sec. 18, art. 6,) have original jurisdiction in all matters of probate, settlement of the estates of deceased persons, the appointment of guardians and conservators, and in other matters enumerated, and it is not apprehended it is in the power of the General Assembly to take away from county courts jurisdiction conferred upon them by the constitution. Probate courts may be established in a class of counties indicated by their population whenever the legislature may see proper to do so, and such courts will have original jurisdiction in certain matters, but there is no authority in the constitution for making that jurisdiction exclusive. Both courts have, and may continue to have, original jurisdiction in a class of cases designated. Nothing contained in the constitution is inconsistent with the existence of two courts in the same county having original jurisdiction in the same class of cases. More than once this court has had occasion to apply this construction to county and circuit courts. It has been decided the General Assembly has no power to take from circuit courts original jurisdiction, which they have under the constitution, and transfer it to the exclusive jurisdiction of county courts. Concurrent jurisdiction with the circuit courts in certain matters might be conferred on county courts, but that jurisdiction could not be made

exclusive in the latter courts. (*Myers* v. *The People,* 67 Ill. 503; *Mapes* v. *The People,* 69 id. 523.) It is needless to say that such jurisdiction as the legislature may rightfully confer upon any court may be revoked at any time by the same authority, but jurisdiction given by the constitution to a court can not be taken from it by the legislature and transferred to another court.

This construction is conclusive against the correctness of the proposition, so confidently stated, that county courts in counties where probate courts have been or may be established, are a different class of courts from county courts in counties having no probate courts. Such is not the fact, and there is no warrant for any distinction. Although a probate court may be established in any county having a population of over fifty thousand inhabitants, yet the county court of that county will retain all the jurisdiction given it by the constitution, even in matters that may also be within the jurisdiction of the probate court. It is for the unanswerable reason the constitution has declared what jurisdiction a county court may exercise, and it has not provided any portion of that jurisdiction may be taken away or transferred to the exclusive jurisdiction of a probate or any other court. It is apparent, then, that county courts in all the counties of the State have, and must have under the constitution, the same powers and jurisdiction, whether probate courts are established in some of them or not, and hence constitute a "class of courts," within the meaning of that instrument, concerning which all laws must be general, and of uniform operation. The section of the statute cited, in terms, applies only to county courts in counties in which probate courts are or may be established, giving to such courts concurrent jurisdiction with circuit courts in certain matters in law and in equity. Judicial notice will be taken of the fact but few counties in the State have a population of over fifty thousand inhabitants, and by reason of that fact may have a probate court. It is plain, therefore,

9—103 ILL.

the law that purports to confer increased or extended juris-
diction on county courts in counties where probate courts are
or may hereafter be established, applies only to a part of a
class or grade of courts, and falls within the inhibition of
that clause of section 29, art. 6, of the constitution, which
declares, "all laws relating to courts shall be general, and
of uniform operation, and the organization, powers,, pro-
ceedings and practice of all courts of the same class or
grade, so far as regulated by law, and ·the force and effect of
the process, judgments and decrees of such courts, severally,
shall be uniform." Had the convention which framed the
constitution intended, as the argument maintains, the effect
of establishing probate courts in counties having the requisite
population would be to deprive county courts in such coun-
ties of that jurisdiction they previously had under the consti-
tution, and which probate courts might thereafter exercise, it
is singular such language was not employed as would have
made that intention clear. But that was not done. The
constitution contains nothing, that in the slightest degree
indicates that probate courts shall have *exclusive* jurisdiction
over matters within their jurisdiction, when established. Pro-
bate courts, when established, the constitution itself limiting
their powers, can only have concurrent jurisdiction with
county courts in certain matters, and that is all. The inten-
tion of the framers of the constitution can only be accurately
ascertained from the.words employed to express their mean-
ing, and the words employed are to be understood in their
ordinary and usual signification, otherwise there could be no
safe or uniform interpretation of such instruments. Courts
are not at liberty to suppose one thing or another was meant,
unless it is plainly expressed, or arises by necessary implica-
tion from unambiguous terms employed.

The question now being considered, whether the jurisdic-
tion county courts had in probate matters under the consti-
tution, passed exclusively to probate courts when they should

be established, was not raised or discussed in *The People* v. *Loomis*, 96 Ill. 377. It does not appear that phase of the case was presented to the court. The only point decided was, whether the county court of Cook county, since a probate court was established in that county under the provisions of the act of 1877, still had jurisdiction to foreclose a mortgage made by a guardian on behalf of his ward, and it was held that under the act of 1869, applicable to all county courts in the State, irrespective of the fact whether probate courts had been established or not, the court had jurisdiction to entertain a bill for that purpose. It was thought that neither the section of the constitution that provides for the establishment of probate courts, nor the act of the legislature, had deprived the county court of jurisdiction in such cases.

In the views here expressed only two other members of the court concur with the writer. A majority of the court, however, are of opinion the "Act to extend the jurisdiction of county courts in counties in which probate courts are or may be established," in force July 1, 1881, is unconstitutional, and for that reason it follows it was error in the county court to entertain jurisdiction of the bill, and its decree will be reversed and the bill dismissed.

*Decree reversed.*


Mr. JUSTICE MULKEY: While I concur in the conclusion reached in this case by a majority of the court, I am unable to give my assent to the grounds upon which the decision is placed, as expressed in the foregoing opinion. Therefore, in justice to myself, and in order to avoid any misapprehension with respect to the position of the court upon the subject, I deem it proper that I should present my own views in a separate opinion, and shall accordingly do so.

It is provided by section 29 of article 6 of the constitution, that "the organization, *jurisdiction, powers,* proceedings and practice of all courts of the same class or grade, so far as

regulated by law,  *   *   *   shall be uniform." Now, it is manifest if there was no other provision in the constitution operating as an exception to or limitation upon the one just cited, the legislature would have no power or authority to confer, as was attempted to be done in .this case, chancery jurisdiction upon one or more of the county courts in the State, without at the same time conferring it upon the others also. The framers of the constitution, however, foresaw that in very large counties the business of these courts might, and probably would, increase to such an extent as to require a separation of the probate from the other business therein; and with a view of providing for such a contingency, they, by the 20th section of the same article of the constitution, declared that the legislature might provide for the establishment of probate courts, with "original jurisdiction in all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices, and in cases of sales of real estate of deceased persons for the payment of debts." The only limitation on the power of the legislature to establish these courts in the several counties in the State, as will appear from the various provisions of the constitution relating to the subject, is the one contained in the 20th section itself, which forbids the establishment of such courts in any county not having a population in excess of fifty thousand. *Knickerbocker* v. *The People ex rel.* 102 Ill. 218.

It will be perceived by reference to the 18th section of article 6 of the constitution, which creates county courts and defines their jurisdiction, that the jurisdiction of these courts and ·of probate courts, so far as it relates to "matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices," is the same. But in addition to this, county courts are by the same section

given jurisdiction "in proceedings for the collection of taxes and assessments, and such other jurisdiction as may be provided by general law."

The question is then presented whether probate courts, when established by the legislature under the 20th section, were intended to take the place of and be substituted for county courts, in so far as the jurisdiction of the two courts, as specifically defined in the constitution, is the same.

I frankly confess this question is not free from difficulty, and that it cost me much thought and reflection before arriving at a satisfactory conclusion. My first inclination was, that no such substitution in the respect stated was intended, but upon more mature consideration of the matter I am fully satisfied that such was the intention of the framers of the constitution. I concede the general proposition that where two courts of like powers and jurisdiction, in whole or in part, are established at different times in the same judicial district, the law creating the second court will not ordinarily, in the absence of an express declaration to that effect, operate as a repeal of the act establishing the first court, in so far as their jurisdiction is the same, but in such cases the jurisdiction of the two courts will be regarded as concurrent. Yet this, like all other rules, is subordinate to the universal and fundamental principle that all laws must be so construed as to give effect to the intention of the law-makers. The above general rule, subject to the fundamental limitation just stated, has been fully recognized by this court in construing the constitution.

The real question, therefore, to be determined now is, what did the framers of the constitution intend in this particular instance? If it was customary for matters of probate to be transacted in two or more courts in the same judicial district or territorial limits, or if this might be done without occasioning great inconvenience, I should unhesitatingly say the jurisdiction was intended to be concurrent, and not a mere transfer

of it from one court to another. But such is not the case. The proposition that there may be, under our constitution, two courts in the same county at the same time exercising probate jurisdiction, is not only novel, but it is believed no instance of the kind can be found; and the very fact it is without precedent, affords a strong reason why the constitutional convention could not have intended it. Moreover, I am confident if the constitution should be thus construed it would lead to great confusion and inconvenience in the management and settlement of estates, and this, to my mind, affords a conclusive reason why such a construction should not receive judicial sanction. For instance, letters of guardianship or of administration might happen to be made by different persons at the same time—one in one court, and the other in the other. In such case, each court might insist on maintaining its own jurisdiction, and neither applicant might be willing to yield to the other. This would evidently give rise to rival claimants of the same estate, and while these contests would be going on, the estate itself might, and doubtless would, suffer, to the detriment of those interested in it. Any number of complications of this character might readily be suggested, but it is unnecessary to do so.

There is one matter, however, in this connection, which deserves special notice. I allude to the great inconvenience it would be to creditors and others interested in estates, who are constantly having occasion to examine the probate records for the purpose of ascertaining their condition and of seeing how they are administered, if they were compelled, as they certainly would be if the construction contended for is the correct one, to examine the records of two courts, instead of one, before they could certainly know their exact condition. It would be difficult, if not impossible, to estimate the inconvenience and trouble which would inevitably arise from this cause alone, to say nothing of the other evils suggested, growing out of such a system.

These considerations, in addition to many others of a like character that might be mentioned, in my judgment absolutely forbid the idea that the framers of the constitution ever intended there should be two courts having probate jurisdiction in the same county.

I hold, therefore, the establishment of a probate court, under the constitution, in a particular county, is *ipso facto* a revocation of the jurisdiction of the county court of such county as to all matters over which probate courts are given jurisdiction, and with respect to which county courts in counties not having probate courts exercise a similar jurisdiction,—or, in other words, that upon the establishment of a probate court in a particular county, the county court of such county is at once, by operation of law, deprived of its jurisdiction in matters of probate, and in all other matters over which probate courts are given jurisdiction, for there is no such a thing, in my judgment, as concurrent jurisdiction between the two courts in the same county. The jurisdiction of the latter courts is clearly exclusive. And in this conclusion I am authorized to say that Mr. Chief Justice Craig and Justices Dickey and Sheldon concur.

This being the effect of establishing a probate court under the 20th section of article 6 of the constitution, it follows the legal operation of that section is to create an exception to or a limitation upon the 29th section of the same article, which requires the jurisdiction and powers of county courts, and other courts of the same class or grade, to be uniform. Taking the two sections together, so far as the present inquiry is concerned, they, in effect, declare that the jurisdiction and powers of the county courts of this State shall be uniform, except in counties having a population in excess of fifty thousand, in which the legislature shall establish probate courts, in which latter counties the county courts shall exercise no probate or other jurisdiction which is specifically conferred upon probate courts, but that in all other respects

their jurisdiction and powers shall be the same as those exercised by other county courts in counties where no such probate courts are established,—in other words, the constitution has authorized this uniformity of jurisdiction with respect to county courts, under certain circumstances, to be partially disturbed or broken by withdrawing from them a certain portion of their jurisdiction, specifically determined by the constitution itself, for the purpose of conferring the same upon certain special tribunals, called probate courts, created for the express purpose of relieving county courts of a portion of their business, which the framers of the constitution supposed, in course of time, would increase to such an extent as to require the relief in question.

So far the constitution has authorized a departure from the rule created by that instrument requiring the jurisdiction of county courts to be uniform, and no further. Clearly the authorizing of an infraction of a general rule for a specific purpose does not confer authority to break the rule for a different purpose. The constitution, in effect, says to the legislature, you may, under certain contingencies, for the purpose of relieving county courts in large counties where their business has greatly increased, withdraw from them a specific portion of their jurisdiction; but this certainly does not authorize the legislature, after having exercised the power in this respect, to go on and destroy the uniformity in the jurisdiction of these courts in other respects. A power to deprive a court of a portion of its jurisdiction affords no authority for conferring additional jurisdiction on the same court, as was attempted in this case.

If it be suggested the legislature is authorized to increase the jurisdiction of county courts without any constitutional grant for that purpose, the obvious answer is, that this power is subject to the qualification that such increase of jurisdiction must extend to all county courts in the State, so as to give effect to the provision of the constitution requiring

uniformity of jurisdiction. Outside the special jurisdiction conferred upon probate courts, which can neither be enlarged nor diminished, the legislature may alter or change the jurisdiction of county courts, except in so far as it is controlled by the constitution, at pleasure, provided the legislation for such purpose is general, and applicable alike to all county courts in the State.

The position that the giving of the legislature authority, under certain circumstances, to partially depart from the rule of uniformity with respect to certain specifically determined subjects of jurisdiction, affords any authority for a further departure from the rule with respect to other jurisdictional matters not embraced in the constitutional category, is wholly at variance with every principle of law and logic. Nevertheless, the legislature, merely because the constitution authorizes a departure from the rule of uniformity in the respect stated, has gone on and attempted to confer on county courts in all counties where probate courts have been established, "concurrent jurisdiction with the circuit courts in all cases at law and in equity, except in criminal cases where the punishment may be death or confinement in the penitentiary." This act I regard in palpable violation of section 29 of article 6 of the constitution, requiring uniformity of jurisdiction in county courts, and it is no answer to this objection to say, that because the uniformity of jurisdiction of these courts was by the authority of the constitution partially destroyed, they thereby became a separate class of courts, whose jurisdiction might be increased or diminished to any extent the legislature might think proper, without any regard to the jurisdiction of county courts in' counties not having probate courts, for there is nothing in the constitution that warrants this assumption. There is but one class of county courts known to the constitution and laws of this State, and their jurisdiction and powers, in my judgment, must be uniform, except in so far as the constitu-

tion has otherwise expressly provided.    To sustain such legislation as this, would be to defeat the very object and purpose of the constitution in providing for probate courts.    The latter courts are created for the purpose of relieving such of the county courts as are supposed to be unable to do all the business brought to them, and not merely to enable them to get rid of their appropriate business, so that the legislature may in effect convert them into circuit courts, as was attempted to be done in this case.