THE PEOPLE *ex rel.* John G. Henderson

*v.*

WILLIAM J. ONAHAN *et al.*

*Opinion filed December 22, 1897.*

1. CONSTITUTIONAL LAW—*section 29 of article 6 of the constitution construed.* The general words, "all laws relating to courts shall be general and of uniform operation," used in section 29 of article 6 of the constitution, are limited by the words which follow, requiring that all laws which relate to the "organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade" shall be general and of uniform application.

2. SAME—*Jury Commissioners act of 1897 is not unconstitutional, as violating section 29 of article 6 of constitution.* The Jury Commissioners act of 1897 (Laws of 1897, p. 243,) is not unconstitutional, as violating the provisions of section 29 of article 6 of the constitution, which require that laws relating to the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade shall be general and of uniform application.

3. SAME—*Jury Commissioners act of 1897 is not unconstitutional, as violating section 22 of article 4 of constitution.* The Jury Commissioners act of 1897 is not unconstitutional, as violating the provisions of section 22 of article 4 of the constitution, which forbid the passage of local or special laws regulating county affairs.

4. SAME—*Jury Commissioners act is not a local or special law.* The Jury Commissioners act of 1897, which provides that "in every county of this State now containing or which may hereafter contain more than 100,000 inhabitants" the judges of the several courts of record may choose persons to act as jury commissioners, etc., is not invalid, as being a local or special law, because now applicable only to Cook county.

5. STATUTES—*fact that law becomes inoperative does not render it void.* An act valid when passed but which becomes inoperative by reason of the failure of the electors of any county in the State to adopt it within the time designated therein, does not become void, but may be so amended by the legislature as to provide for its re-submission to the electors.

6. SAME—*an act complete in itself is not invalid because passed as an amendment to an inoperative act.* An act which possesses all the attributes of a complete statute in itself is not invalid because passed as an amendment to an act which had become inoperative.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

170—29

CHARLES S. DENEEN, State's Attorney, for relator:

The constitution (art. 4, sec. 22,) provides that "the General Assembly shall not pass local or special laws * * * regulating the practice in courts of justice." Section 29 of article 6 also provides that "all laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform."

A law passed prior to the adoption of the constitution of 1870, authorizing the appointment of stenographic reporters by the courts of Cook county, was abrogated by section 29 of article 6 of the constitution. *People* v. *Rumsey*, 64 Ill. 44.

The prohibition of the enactment of "local or special laws" for certain purposes is equivalent to a command that general laws alone shall be enacted therefor, for the words "local or special" are clearly used in contradistinction to the word "general," and there being no power to enact "local or special" laws there can be no other than "general" laws enacted. *People* v. *Cooper*, 83 Ill. 584.

The conclusive point of all this lies in this fact, which is convincing against the law: The courts of Cook county are, although of the same grade and power as the circuit courts of the one hundred and one other counties of the State, now exercising greater powers than any other of said courts. It is useless to add to this proposition by argument. The point is patent and invincible.

ADOLPH MOSES, also for relator:

The act under consideration, by its own terms, is only applicable to Cook county, and is therefore unconstitutional under the case of *Devine* v. *Cook County*, 84 Ill. 590.

The act increases the "powers" of the courts, forbidden by section 29, unless the powers are general and uni-

form, conferred on all courts of the same grade or class in the State.

The act amends an act not then a live law, and is therefore void. The act which it attempts to amend was itself unconstitutional, and remains so as amended.

ROBERT E. JENKINS, and ROBERT S. ILES, for defendants in error:

The act of 1887 was duly passed and approved. It is among the published statutes of Illinois. (See Hurd's Stat. 1895, chap. 78, secs. 26-31.) It has never been repealed and was subject to amendment. The constitution of Illinois, in using the word "revived," seems to refer to just such a case as this. Const. art. 4, sec. 13.

In any case, this statute is complete in itself, and is good as an independent enactment, although purporting to be an amendatory act. *People* v. *Canvassers*, 143 N. Y. 84; *School Directors* v. *School Directors*, 73 Ill. 249; 23 Am. & Eng. Ency. of Law, 277; *Gandy* v. *State*, 86 Ala. 20; *People* v. *Pritchard*, 21 Mich. 235; *Timm* v. *Harrison*, 109 Ill. 593.

That a statute passed as an independent act will be treated as an amendment, when necessary to sustain it, is a settled rule in Illinois. *People* v. *Wright*, 70 Ill. 388; *English* v. *Danville*, 150 id. 92.

This statute applying to all counties that now have or that may hereafter have a population of 100,000, comes within the settled rule of construction in Illinois, which is, that an act general in its terms, and uniform in its operation upon all persons and subjects matter in like situation, is a general law, and not obnoxious to the objection that it is local or special legislation. The same rule sustains the act of 1887. ·

This principle was applied to a classification of cities according to population, for purposes of a jury law, in *Dunn* v. *Kansas City C. R. Co.* 131 Mo. 1. To a classification according to population, for special assessments, in *Cummings* v. *Chicago*, 144 Ill. 563. To a classification of incor-

porated cities, towns and villages, in *People* v. *Beardsley,* 70 Ill. 680. To a classification of claims, in *Ripley* v.*Evans,* 87 Mich. 217. To counties according to population, in *Knickerbocker* v. *People,* 102 Ill. 218. To a classification of municipalities determined by vote of the people, in *People* v. *Hoffman,* 116 Ill. 587. To a classification of cities, in *People* v. *Wright,* 70 Ill. 388. To a classification of lawsuits, in *Jensen* v. *Fricke,* 133 Ill. 171. To a classification of cities with reference to fares of street cars, in *Indianapolis* v. *Navin,* 47 N. E. Rep. 525. To a classification of corporations, and uniformity said to be "attained by its operation upon all persons in like situation," in *Iowa Railroad Land Co.* v. *Soper,* 39 Iowa, 112.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiff in error filed an information in the nature of a *quo warranto* in the Superior Court of Cook county, against the defendants in error, alleging that the defendants had intruded into, held and executed, and still hold and execute, without warrant or right, the office of jury commissioners, and calling upon them, the defendants, to show by what warrant they claimed to hold and execute said office. The defendants in their plea set forth that on the first Monday of July, 1897, the judges of the several courts of record of Cook county,—a county containing more than 100,000 inhabitants,—met together and chose them, the defendants, to be jury commissioners of said county, by virtue of an act of the legislature entitled "An act to amend an act entitled 'An act to authorize judges of courts of record to appoint jury commissioners and prescribe their powers and duties,'" approved June 9, 1897; that, having been so chosen, they duly qualified and entered upon the discharge of the duties of such office. The court overruled the demurrer of plaintiff in error to the plea, and held that said appointment under said statute, and the qualification of defendants in error, showed sufficient warrant and authority to hold said

office and perfórm the duties thereof.   This writ of error
was then sued out.

The only question raised or involved in the case is the
constitutionality of the statute.   Counsel for plaintiff in
error contend that the act violates section 22 of article 4,
and section 29 of article 6, of the constitution.  Section 22,
so far as claimed to apply here, provides: "The General
Assembly shall not pass local or special laws in any of the
following enumerated cases, that is to say: for  *   *   *
regulating the practice in courts of justice,  *  *  *  sum-
moning and impaneling grand or petit juries."  And said
section 29 provides:  "All laws relating to courts shall
be general and of uniform operation; and the organiza-
tion, jurisdiction, powers, proceedings and practice of all
courts of the same class or grade, so far as regulated by
law., and the force and effect of the process, judgments
and decrees of such courts, severally, shall be uniform."
If the act violates either of said provisions of the consti-
tution it is, of course, void.

The first section of the act provides, in substance, that
in every county which now has or which may hereafter
have more than 100,000 inhabitants, the judges of the sev-
eral courts of record of such county, or a majority of them,
shall choose three competent and discreet electors, who
shall be known as jury commissioners; provides for their
qualification, and for removals, and the filling of vacan-
cies.   Section 2 provides that said commissioners shall,
upon entering upon their duties, and every four years
thereafter, prepare a list of all electors between the ages
of twenty-one and sixty years, possessing the necessary
legal qualifications for jury duty, to be known as the jury
list, which list may be revised annually, in their discre-
tion; provides also for entering upon books to be kept,
the names of each person on the list, his age, occupation,
residence, whether a householder residing with his family,
and whether or not a freeholder.   Section 3 gives the
commissioners power to appoint, with the approval of

said judges, a deputy in each precinct, to furnish lists of qualified electors and also other required information, to summon and examine electors as to their qualifications for jury duty, and to administer oaths in discharge of their duties. Section 4 provides that the commissioners shall, from time to time, select from the jury list the requisite number of names, each name to be written upon a separate ticket, with the age, place of residence and occupation, and shall place them in a box to be kept for that purpose, to be known as the "jury box," and which box shall at all times contain not less than 15,000 names. In like manner a grand jury box shall be kept, the names to be selected from the jury list and deposited in like manner in such box, and the number to be at all times not less than 1000. The jurors who are thus selected and whose names are placed in these boxes are to be, as near as may be, residents of different parts of the county and of different occupations. One or more of the judges of the court must certify to the clerk of the court the number of jurors required for each term, and the clerk shall, in the presence of at least two of the commissioners and their clerk, if they have any, draw at random from said jury box, after the same shall have been well shaken, the necessary number of names, and certify them to the sheriff to be summoned according to law, and if more jurors are needed they are to be drawn and summoned forthwith in the same manner. Section 5 provides that the grand jurors shall be drawn and summoned in like manner, and that at the end of each term of court the commissioners shall check off from the jury list all who have served, and their names shall not again be placed in either jury box until all others on the list shall have served or been found disqualified or exempt; the names of all who are qualified and have been excused shall be again placed in the jury box. Section 6 provides for the compensation and payment of the commissioners and their assistants.

It must be conceded that if the effect of this statute is to regulate the practice of courts in counties of over 100,-000 inhabitants, or to affect such courts in any way so that their organization, jurisdiction, powers, proceedings or practice shall no longer be uniform with that of other courts in the State of the same class or grade, the statute is void and must be so declared, even although we should hold it not to be a local or special law prohibited by section 22 of article 4 of the constitution, for it is the clear purpose of section 29 of article 6 to require and maintain uniformity in the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade in the State, so far as regulated by law, and in the force and effect of their process, judgments and decrees. It is, of course, true, that the construction of this section might be affected by other provisions of the constitution where statutes are enacted under them, such as section 20 of article 6, providing for the establishment of probate courts in each county having a population of over 50,000, (*Klokke* v. *Dodge*, 103 Ill. 125,) and, possibly, in some respects by the provisions relating to the courts of Cook county. Thus, it was said in *Knickerbocker* v. *People*, 102 Ill. 218, (on p. 226,) that section 26 "must be so construed as to harmonize with and give effect to the 20th section in the sense we have construed it;" and in reference to section 26 it was further said: "It is manifest that the introductory clause of that section cannot be given effect according to the literal meaning of the broad terms in which it is conceived. To do so would lead to the most absurd consequences, and would be in direct conflict with the decisions of this court. The words are, 'all laws relating to courts shall be general and of uniform operation.' Notwithstanding this provision the legislature is constantly in the habit of passing special laws fixing the commencement and the length of the terms of particular courts, which are manifestly laws relating to courts, and such acts, though neither uniform in their operation, nor

general, within the sense of the constitution, are univer-
sally recognized as constitutional and valid.  In discuss-
ing this matter it was said in *Karnes* v. *People*, 73 Ill. 274:
'Constitutions, like all other laws, must have a reasona-
ble and practical interpretation.   To give this language
a literal application would require all courts in the State
to meet on the same day and the terms to be of the same
length.   This could not have been intended, because it
must have been apparent to the framers of that instru-
ment that such a thing could never be carried into effect.'"
As there held, the general terms employed in the introduc-
tory clause of that section are limited by what follows,
which requires that all laws which relate to the organi-
zation, jurisdiction, powers, proceedings and practice of
courts shall be general and of uniform application, apply-
ing to all courts of the same class or grade.

The first question presented, then, is this:   Does the
act in question relate to or affect the organization, juris-
diction, powers, proceedings or practice of courts in coun-
ties containing 100,000 inhabitants?  If it does, the act is
void, because it violates said section 26.   It is not con-
tended that the organization or jurisdiction of such courts
is in any way affected by this statute, but the argument
of plaintiff in error tends to the conclusion that the pow-
ers, proceedings and practice of the court are changed or
materially affected.   It is not contended that the statute
takes away any of the common law powers of the courts
to summon and impanel juries, but the argument on this
branch of the case is that certain new powers are con-
ferred by the act, and we are referred to *People* v. *Rumsey*,
64 Ill. 44, where it was held that a statute applicable
only to the courts of Cook county, authorizing them to
appoint stenographic reporters, was abrogated by this
provision of the constitution upon its adoption in 1870;
and to *O'Connor* v. *Leddy*, 64 Ill. 299, holding that by the
adoption of the constitution a prior law regulating the
practice in the circuit court of Cook county, and requir-

ing the defendant to file an affidavit of merits with his plea, was abrogated.  See, also, *Mitchell* v. *People*, 70 Ill. 138, and *Devine* v. *Commissioners of Cook County*, 84 id. 590.

The two cases first cited decide the principle, but they do not help us to determine whether or not the statute here involved affects the powers, proceedings or practice of the courts in such counties.   It is, however, said, that the act confers upon the judges, or a majority of them, of the several courts of record in a county having 100,000 inhabitants, the power to appoint the jury commissioners. This is true, and it also authorizes such judges to approve the appointment by the commissioners of assistants and a clerk, and to approve their warrants drawn for their expenses, but no additional power is conferred upon the courts of such counties by these provisions.   It has been held that power may be lawfully conferred upon judges of courts to appoint park commissioners.   (*People* v. *Morgan*, 90 Ill. 558; *People* v. *Nelson*, 133 id. 565.)   Notwithstanding this power in the judges to appoint, the powers, proceedings and practice of the courts remain the same as before.  The only provision of the statute which might seem to add to the powers of the court is that which authorizes the court to compel the attendance of electors when summoned by the commissioners, and to give testimony before them, by attaching for contempt, or otherwise, in the same manner as the production of evidence may be compelled before said court.  No point, however, has been made in the argument on this provision, and we shall not further consider it, for if it were held invalid, the rest of the statute, as probably conceived by counsel, would not thereby be rendered void, for it would be sufficiently complete in itself to stand and be enforced without said provision.   No opinion, however, is expressed whether said provision is valid or not, as that question would not necessarily arise except in a proceeding to enforce it.

The statute does not relate to or affect the proceedings or the practice of the court. The same officer—the clerk of the court—draws the names of the jurors from the jury box, and they are summoned to appear in court in the same manner as under the previous general law. The fact that the drawing is done in the presence of two of the commissioners, instead of the county clerk and the county judge, in nowise affects the proceedings or practice of the court. The radical change consists, not in any proceedings or practice of the court, but in the selection, from the body of electors of the county, of a jury list, from which the names are placed in the jury box as provided by the statute, from which jurors are drawn, as required, by the same officer authorized to draw them in other cases. Under the statute heretofore applicable to all of the counties in the State, this jury list has been furnished by the county boards, and it would seem that the most that could be said would be, that power in the respect mentioned has been taken from the county board in counties having 100,000 inhabitants, and conferred, with some additional authority, upon the jury commissioners. So far as the statute dispenses with the presence of the county judge and county clerk in such counties at the drawing of the jurors for any term of court, it is sufficient to say that the county court is not, in any of the respects mentioned in the constitution, affected thereby.

We are unable to see, from any reasonable standpoint, how the proceedings or practice of the court can be affected by this statute. If it were held to be a local or special statute, it would seem to come more nearly in conflict with the provision in section 22 forbidding the passage of any local or special law regulating county affairs. It is not, however, contended by plaintiff in error that this provision of the constitution is violated, but it is claimed that the statute is local and special in its application, and so appears from the terms employed in it, and that it is inhibited by other provisions of said section 22,—that

is, that it regulates the practice in courts of justice, and provides for summoning and impaneling grand and petit juries. It is clear, we think, from what has already been said, that the statute neither regulates the practice in courts of justice nor provides for summoning or impaneling juries. Both grand and petit juries must be summoned and impaneled in such counties, so far as regulated by law, as before the passage of the act in question.

Besides, we are of the opinion that this statute is not a local or special law, within the meaning of the constitution. While in some parts of the argument in *Devine* v. *Commissioners of Cook County*, 84 Ill. 590, language is used which might lend color to the contention that the legislature has no power to classify counties in respect to population, except in those cases expressly provided for in the constitution, yet the decision was based upon the ground that the act there in question, by its very terms, precluded it from having any application to any county except the county of Cook, and it was said that an act "designating counties, as a class, according to a minimum population, which makes it absolutely certain but one county in the State can avail of the benefits of a law applicable to such class, cannot but be regarded as a mere device to evade the constitutional provision forbidding special legislation." But as said in the later case of *Cummings* v. *City of Chicago*, 144 Ill. 563 (on p. 567): "There the power given by the act, necessarily, not only by limitation of population but by the wording of the statute and the purposes and objects declared, related to a single county; and, moreover, the right to exercise the powers granted was limited to six years, within which time it was impossible that any other county could reach the population designated." The statute here involved is not open to such construction, for, although the court might know judicially that at present no county in the State but Cook has the required population, it is matter of common knowledge, which, it is fair to assume, influenced

the legislature, that other counties are near to the prescribed limit in population, and contain cities of such size and density of population that the method of selecting the jury list applicable to less populous communities cannot, with due regard for the public welfare, continue to be applied. We cannot believe that it was the intention of the framers of the constitution, by said section 22 prohibiting local or special legislation in the cases therein enumerated, and which was intended to eradicate then well known existing evils, to forbid the passage of any law relating to the subjects enumerated in said section, unless by its terms and effect it should apply in all cases to all the people of the State and to every local subdivision thereof. To so hold would be to give to the constitution the strictest construction, and one never intended by its framers. Constitutions, like statutes, must receive a reasonable construction, and in accord with this view it was held in *Cummings* v. *City of Chicago, supra,* that "it has been determined, and has become the settled rule of construction in this State, that an act general in its terms, and uniform in its operation upon all persons and subject matter in like situation, is a general law, and not obnoxious to the objection that it is local or special legislation." (*People* v. *Hoffman,* 116 Ill. 587.) Before an act of the legislature can be held unconstitutional it must be clear that it is so. All doubts are to be resolved in favor of the validity of the statute. And in this connection it is to be borne in mind that the constitution is not a grant, but is a limitation, of power, and that the legislature possesses all of the power of the State not denied to it by the organic law. Unless, therefore, it clearly appears that the act in question is a local or special law in the sense those terms are used in the constitution, it is not in conflict with said section 22.

Some support of the view we have taken is found in the fact that section 29 of article 6 provides not only that all laws relating to courts shall be general, but also of

uniform operation, thus recognizing the view that a law relating to the organization, jurisdiction, powers, proceedings and practice of courts of the same class or grade might be general and still not of uniform operation. So, even if it were held,—which we do not hold,—that the statute in question relates to the powers, proceedings or practice of courts, it might still be a general law, but would be void under said section 29 only, because not of uniform operation. Holding, then, that the act is a general and not a special or local law, it is immaterial to inquire whether or not it regulates county affairs.

We cannot agree with counsel in their contention that the statute shows on its face that it was intended to apply only to Cook county because in the latter part of the first section it is provided that "the majority of the judges of such county may remove either of such commissioners," etc. The power to appoint the commissioners is in the first part of the act vested in "the judges of the several courts of record of such county, or a majority of them." In counties other than Cook, as our judicial circuits are at present constituted, this would include, with other judges of courts of record of such county, all the circuit judges of the circuit, whether residing in the county in which the jury commissioners were to be appointed or not, and the judges referred to in the latter part of the section are clearly the same upon whom the power to appoint is conferred.

Counsel for the respective parties have in their able arguments cited and commented on many cases which we have not deemed it necessary to refer to, but reference may be had to *Dunn* v. *Kansas City C. R. Co.* 131 Mo. 1; *State* v. *Reitz*, 62 Ind. 159; *Van Riper* v. *Parsons*, 40 N. J. L. 123; *Bumstead* v. *Govern*, 47 id. 368; *Hunzinger* v. *State*, 58 N. W. Rep. (Neb.) 194; 23 Am. & Eng. Ency. of Law, 148; *Ripley* v. *Evans*, 87 Mich. 217.

The next contention is, that the statute is an amendatory act only,—that it purports to amend an act on

the same subject, passed in 1887, which never went into effect, and was invalid when said amendatory act was passed. The statute of 1887 provided for the submission of the question to a vote of the electors of any county on the Tuesday after the first Monday of November in 1887, whether or not there should be appointed a jury commission, and that such commission should be appointed if so decided by a majority of the votes cast at such election. That act was not adopted by any county at the time designated, and could not have been at any time since then, without amendment, but it is contended that, as it contained no provision for submission at any other time, it became null and void and therefore incapable of amendment. It is, of course, true that a void law cannot be amended. The act of 1887, however, seems to have been passed in compliance with the constitution, but never came into full operation as a law because the contingency upon which it was to become operative never happened, and, it must be admitted, never can happen according to its terms as originally enacted. Still, it would seem that, as it was valid when passed, while it might remain inoperative it would not necessarily become invalid, and the legislature might so amend it as to provide for its resubmission. (*Home Ins. Co.* v. *Swigert,* 104 Ill. 653.) But we do not deem it necessary to decide whether that statute became invalid and incapable of amendment or not, for we are satisfied the act here involved possesses all of the attributes of a complete statute in itself. As said in *School Directors* v. *School Directors,* 73 Ill. 249 (on p. 252): "Here we have a law possessing all the requisites of a valid statute passed by the General Assembly, containing clear requirements capable of being carried into effect, * * * and we have no right, simply because there is a mistaken reference to a previous statute, to defeat that will. * * * An unessential false description can never defeat a grant, contract or other instrument, nor should it defeat a statute." To the same effect it was said in *People* v. *Canvassers,*

143 N. Y. 84, that "the enactment of this law is put into the form of an amendment of a law which was standing upon the statute books, and whether that earlier law, by force of subsequent legislation, had become inoperative is wholly immaterial. The only question is, has the legislature, in the enactment complained of, expressed its purpose intelligibly and provided fully upon the subject? If it has, then its act is valid and must be upheld. That is the case here." *People* v. *Pritchard*, 21 Mich. 235; *People* v. *Wright*, 70 Ill. 388.

The statute here in question is full and complete without reference to any other, and so much of the act of 1887 as is included in it may be regarded as re-enacted. The statute is a valid law, and must be so declared.

The judgment of the Superior Court is affirmed.

*Judgment affirmed.*