# THE PEOPLE *ex rel.* Ernst F. C. Klokke

### *v.*

# LEVI P. WRIGHT.

1. COMMISSIONERS OF THE BOARD OF POLICE OF THE CITY OF CHICAGO. The commissioners of the board of police of the city of Chicago are members of a board organized under an amendment of the charter of the city of Chicago, and are included in the first section of the act, in force July 1, 1872, commonly known as the Mayors' bill.

2. The board is the creature of legislation, and the legislature can, in their discretion, provide how the commissioners shall be selected or appointed, and may change the mode from time to time, as the welfare of the city seems to demand.

3. The rule ordinarily is, that where the right is once given to elect to a particular office, it is not subsequently withheld, and the office filled by appointment, yet this is but practice, that may be departed from, the constitution being silent on the subject, whenever the legislature sees fit so to do.

4. The individual commissioner of the board of police, as such, possesses no official authority, and is not a city officer.

5. STATUTE — *whether it is an amendment of another act, unless so expressed in its title.* The mere fact that an act does not, in its title, profess to amend a city charter, is unimportant; it is an amendment if it professes to, and does, enact that which makes new organic law for the city government.

6. CONSTITUTIONALITY *of the "Mayors' bill" — as embracing more than one subject.* The Mayors' bill is not in conflict with section 13, article 4, of the constitution, as embracing more than one subject; the entire act relates to a single general subject, which is sufficiently expressed in the title, namely: the duties of mayors in cities, and there is nothing incongruous in its different provisions.

7. CONSTITUTIONAL LAW—*mode of amending statutes.* The clause of the constitution which says, "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act," can not be held to embrace every enactment which in any degree, however remotely, affects the prior law on a given subject. An act complete in itself, is not within the mischief designed to be remedied by this provision, and is not prohibited by it.

8. SAME—*special legislation.* A local or special statute is limited in the object to which it applies; a temporary statute is limited merely in its duration; a local or special law may be perpetual, or a general law may be temporary; the Mayors' bill is neither local nor special—it is a temporary general law, and is not within the provision of the constitution prohibiting special legislation.

APPEAL from the Criminal Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was a proceeding in the nature of a *quo warranto.* The information charges that the defendant usurped the office of a commissioner of the board of police, in the county of Cook, and State of Illinois. The defendant pleaded to the information that he was rightfully acting as one of the commissioners of the board of police, by virtue of an appointment made by the mayor of the city of Chicago. To this plea two replications were filed: one, that the relator had been duly elected to said office by a vote of the people of Cook county, and had qualified and was acting as such officer at the time of the alleged appointment of the defendant, and that defendant had unlawfully evicted him; the

390          THE PEOPLE *ex rel. v.* WRIGHT.          [Sept. T.

Opinion of the Court.

other, that the appointment of defendant by the mayor was not legally made. A general demurrer was sustained to both replications, and a judgment for costs rendered against the relator.

Messrs. GOUDY & CHANDLER, for the appellant.

Mr. M. F. TULEY, Mr. JOHN LEWIS, and Mr. I. N. STILES, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The first question arising upon this record is, does section one, of the act in force July 1, 1872, commonly known as the "Mayors' bill," include within its purview commissioners of the board of police of the city of Chicago? That section is as follows:

"In all cities of this State, all city officers, (whose election by the qualified voters thereof is not provided for by law,) and also all members of boards organized under the charter (or amendments thereto) of any such city, except those appointed by the Governor of the State, shall be appointed by the mayor of the city, by and with the consent of the legislative authority thereof, a majority of all the members elect concurring, by yeas and nays, to be entered upon its journal. Any such city officer, or member of any such board, may be removed by the mayor of any such city, whenever, in his opinion, the interests of the city may require such removal. But he shall report, in writing, his reasons for such removal to the said legislative authority at its next regular meeting. In case of a removal from, or a vacancy in, any such office or board, a successor may be appointed by the mayor, with the like consent of the legislative authority of any such city."

It is contended that commissioners of the board of police are not members of a board organized under the charter of the city of Chicago, or any amendment thereto. The first

board of this description was organized under an act in force February 21, 1861.   Public Laws of 1861, p. 151.

Although that act does not, in terms, profess to be an amendment of the charter of the city of Chicago, it is manifest that such was its necessary effect.   It is entitled, "An act to establish a board of police in and for the city of Chicago, and to prescribe their powers and duties."   It requires the organization of an executive department of the municipal government of the city, to be known as the "board of police of the city of Chicago," and to this board it transfers the control and management of the entire police of the city, and also of all public police property.   Certain powers theretofore exercised by the mayor and common council are, thereafter, to be exercised by the board of police.   Salaries are to be paid the officers of the department out of the city treasury; taxes are to be levied and collected from the taxable property in the city to raise the necessary funds to defray the expenses of the department, and to be paid into the city treasury; and all prior laws in conflict with any of the provisions of the act are expressly repealed.

From the time it became a law, this act was, therefore, the source of certain municipal powers, exercised by those whose functions in the city government related to the protection of the lives, property and liberty of the citizens.   It became fundamental—a part of the organic law of the municipality; in other words, an amendment of its charter; and the mere fact that the act in its title does not profess to amend the city charter, is unimportant.   It professes to, and does, enact that which makes new organic law for the city government, and this is sufficient.   *People* v. *Mahoney,* 13 Mich. 481; *People* v. *Briggs,* 50 N. Y. 553.   The circumstance that the police are authorized, in emergencies, to discharge duties beyond the city limits, neither changes the character of the act, nor in any degree impairs its force as a part of the fundamental law of the city.   The paramount and controlling object in its enactment was, the welfare of the city, and all else

is but incidental or subsidiary to this. Whether, in certain instances, the members of the police force exercise the powers and functions of constables in other parts of Cook county, or not, the board of police is still the "board of police in and for the city of Chicago." The first section of the tenth chapter of "An act to reduce the charter of the city of Chicago, and the several acts amendatory thereof, into one act, and to revise the same," in force February 13, 1863, (Private Laws of 1863, p. 109,) declares that there shall be established an executive department of the municipal government of the city of Chicago, to be known as the "board of police." This is professedly a part of the city charter, and if there could be any doubt whether the board of police, organized under the act of 1861, was "organized under the charter of the city, or any amendment thereto," it would seem to be impossible to question that a board organized under this section, was so organized.

An act, in force February 16, 1865, is entitled "An act to amend an act entitled 'An act to reduce the charter of the city of Chicago, and the several acts amendatory thereof, into one act, and to revise the same,' approved February 13, 1863."

By the 11th section of this act, (Private Laws of 1865, vol. 1, p. 286,) it is provided that "the commissioner of the board of police of said city, now having the longest term to serve, shall continue in office until the next general election for county officers in the year one thousand eight hundred and sixty-seven, and until his successor shall be elected and qualified; the other two commissioners of the board of police of said city, shall continue in office until the day for the general election for county officers in the year one thousand eight hundred and sixty-five, and until their successors shall be elected and qualified."

By the 12th section it is enacted that "at the general election in the year one thousand eight hundred and sixty-five, for county officers, there shall be elected, by the qualified

voters of Cook county, two commissioners of the board of police, as successors to those whose terms of office will then expire by the provisions of the foregoing section, and the commissioner so elected from the north division of said city shall continue in office for six years, and the commissioner so elected from the south division of said city shall continue in office for four years, and until their successors shall be elected and qualified; and at the general election for county officers in the year one thousand eight hundred and sixty-seven, and biennially thereafter, there shall be elected, by the qualified voters of said county, one commissioner of said board of police, as successor to the commissioner whose term of office will then expire by the provisions of this act, who shall hold his office for the term of six years, *   *."

It is provided by the 13th section that "said commissioners shall receive an annual salary of twelve hundred dollars each, and the president of the board shall receive an additional sum of three hundred dollars per annum."

By the 14th section, "the salaries shall be paid out of the city treasury monthly."

The 18th section requires that each of the commissioners shall, on or before the first Monday of May, (then next,) give bonds to the city in the sum of $25,000, conditioned for the faithful performance of their duties under the provisions of the act.

Section 21 declares that all firearms and military equipments belonging to the city shall be in the custody and under the control of the board of police.

Section 23 requires the board of police to assume and exercise the entire control of the fire department of the city, and gives it full power and authority over its organization and government, as also the custody and control of the engine houses, engines, hose carts, trucks, ladders, horses, telegraph lines, and all other public property and equipment belonging to the fire department.

It would, in our opinion, in view of the various enactments referred to, be absurd to hold that the "board of police" is not what the law declares it to be—"the executive department of the municipal government of the city of Chicago," nor can we hesitate to say that it was organized under amendments to the charter of the city.

The board is the creature of legislation, and it was in the legislative discretion to provide how the commissioners should be selected or appointed, and to change the mode from time to time, as the welfare of the city seemed to demand, as it was, also, to abridge or enlarge the scope of the duties imposed on them. Ordinarily, it is true, the right of electing persons to positions of public trust, is confided only to those who are interested directly in the particular trust; still, in the absence of constitutional regulation, it is not indispensable that this shall be done; and, in practice, the theory is departed from whenever the right of election by ballot is denied, and the place is filled by appointment. So, as is argued by the relator, the rule ordinarily is, that when the right is once given to elect to a particular office, it is not subsequently withheld, and the office filled by appointment. Yet this is but a practice, which may be departed from, the constitution being silent on the subject, whenever the legislature shall see fit so to do. A notable departure from the principle exists in the present constitution with regard to justices of the peace in the city of Chicago. By the adoption of that instrument, the right of filling this office—important as it is in the administration of justice—which, from the organization of the State, had been, and which still is, in all other parts of the State, filled by election by popular ballot, was taken from the electors of the city, and the power of appointment was conferred upon the Governor.

It is but reasonable to suppose that the same motives which controlled the constitutional convention in that instance, operated upon the legislature in first making the office of commissioner of the "board of police within and for the

city," elective by the popular ballot of the entire county of Cook, and subsequently conferring the power of appointment and removal to the office upon the mayor of the city. Be this, however, as it may, it is sufficient for the present purpose, that the legislature is not compelled to continue any particular mode of selecting or appointing such commissioners, any more than it is compelled to adhere to the first legislation had defining their powers and prescribing their duties. It is not claimed, nor can it be, that the relator has a vested right in the office, which can not be impaired by legislation. *The People ex rel. etc.* v. *The Auditor*, 1 Scam. 537 ; *The People* v. *Haskell*, 5 Cal. 357 ; *City Council etc.* v. *Sweeney*, 44 Ga. 463 ; *Davis* v. *The State*, 7 Md. 157.

But, conceding that the " board of police " is a city board, it is argued, the commissioner holds a city office, the election to which by the people is provided for by law, and he can not, therefore, be removed, under the language of the 1st section of the " Mayors' bill."

As we understand the various provisions of the acts of 1863 and 1865, before referred to, the individual commissioner of the board of police, as such, possesses no official authority, and has no official duties. The word "commissioner" merely serves to describe a member of a *board* which possesses official power, and exercises official duties. He can only act in the name of and by means of the concurrence of the board of which he is a member. In the former of the acts referred to, in section 1, chapter 2, in declaring what officers the corporation shall have, a "board of police" is mentioned ; but, so far as we have observed, it is nowhere said that a commissioner or member of a board of police shall, as such merely, be a city officer. We think it plain, that, when the legislature used the language in the 1st section of the Mayors' bill, "all city officers," * * "and also all members of boards," they did not mean that members of boards were city officers. It is very clear, that it was intended one rule should apply to city officers, and another to members of boards. In the

former case, the exception is in favor of those whose election
by the qualified voters of the city is provided for by law, and
in the latter case, it is in favor of those who are appointed by
the Governor of the State.

Our conclusion is, that the present case is within the fair
construction of the language of the first section of the May-
ors' bill, and it only remains to notice the objections urged
against the constitutionality of that act.

It is claimed that it conflicts with section 13, article 4, of
the constitution, for two reasons: 1st, because it embraces
more than one subject; and, 2d, because the law amended is
not inserted at length in the act.

With regard to the first objection, it is sufficient to say, the
entire act relates to a single general subject, which is suffi-
ciently expressed in the title—namely, the duties of mayors
in cities—and there is nothing incongruous in the different
provisions. This has always been held to be a sufficient com-
pliance with this clause of the constitution. *Prescott* v. *Chi-
cago*, 60 Ill. 122; *Neifing* v. *Pontiac, etc.*, 56 id. 174; *Matter
of Petition of Ferdinand Mayer*, 50 N. Y. 507; *I. C. R. Co.* v.
*Potts*, 7 Ird. 681; *State* v. *Miller*, 45 Mo. 498.

The language of the constitution, on which the second ob-
jection is based, is: "No law shall be revived or amended by
reference to its title only, but the law revived or the section
amended shall be inserted at length in the new act."

No particular section of any act purports to be amended
by this act. All that can be said of it, in this respect, is,
that, by implication, it amends the municipal charters of
cities. It can not be held that this clause of the constitution
embraces every enactment which, in any degree, however
remotely it may be, affects the prior law on a given subject,
for, to so hold, would be to bring about an evil far greater
than the one sought to be obviated by this clause. Our views
on this question are fully and well expressed by the Supreme
Court of Michigan, in *People* v. *Mahoney*, 13 Mich. 484.
The court there said: "If, whenever a new statute is passed,

it is necessary that all prior statutes modified by it, by impli-
cation, should be re-enacted and published at length as modi-
fied, then a large portion of the whole code of laws of the
State would require to be re-published at every session, and
parts of it several times over, until, from mere immensity of
material, it would be impossible to tell what the law was.
If, because an act establishing a police government modifies
the powers and duties of sheriffs, constables, water and sewer
commissioners, marshals, mayors and justices, and imposes
new duties upon the executive and the citizen, it has thereby
become necessary to re-enact and re-publish the various laws
relating to them as modified, we shall find, before the act is
completed, that it not only embraces a larger portion of the
laws of the State, but also that it has become obnoxious to
the other provisions referred to, because embracing a large
number of objects, but not one of which can be covered by
its title.

" This constitutional provision must receive a reasonable
construction, with a view to give it effect. The mischief
designed to be remedied was, the enactment of amendatory
statutes in terms so blind that legislators themselves were
sometimes deceived in regard to their effect, and the public,
from the difficulty in making the necessary examination and
comparison, failed to become apprised of the changes made
in the laws. An amendatory act, which purported only to
insert certain words, or to substitute one phrase for another,
in an act or section, which was only referred to, but not re-
published, was well calculated to mislead the careless as to its
effect, and was, perhaps, sometimes drawn in that form for
that express purpose. Endless confusion was thus introduced
into the law, and the constitution wisely prohibited such
legislation. But an act, complete in itself, is not within the
mischief designed to be remedied by this provision, and can
not be held to be prohibited by it without violating its plain
intent."

See, also, *Ex parte Pollard,* 40 Alabama, 77, 100; *Spencer* v. *State,* 5 Ind. 41; *Branham* v. *Lange,* 16 Ind. 497.

It is also objected, that the act conflicts with section 22, article 4, of the constitution, which prohibits the legislature from passing local or special laws.

The act is neither local nor special. It applies, in general terms, to all the cities in the State. Whether there may be many or few to whom its provisions will be of any practical force, is not the question. As was observed in *McAunich* v. *The M. and M. R. R. Co.* 20 Ia. 338: "These laws are general and uniform, not because they operate upon every person in the State, for they do not, but because every person who is brought within the relations and circumstances provided for, is affected by the laws. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform, is not affected by the number of those within the scope of their operation." See, also, *Welker* v. *Potter,* 18 Ohio, 85.

The fact that the act is limited as to the time of its duration, does not make it a local or special act, agreeably to any definition of such acts with which we are familiar. "Private or special statutes," says Sedgwick, in his work on Statutory and Constitutional Law, 30, "relate to certain individuals, or particular classes of men." In Smith on Constitutional Construction, it is said: "The general description of public acts is, that they relate to or concern the interests of the public at large, or relate to a general *genus* in relation to things, and private acts relate to private individuals, or an individual only, or which concern a particular *species* of such general *genus* or thing," p. 913, sec. 795; and again, "It has been said, that the distinction between public and private statutes is this: a general or public act is a universal rule that regards the whole community, but special or private acts are rather exceptions, than rules, being those which operate upon private persons and private concerns. It is not necessary, however, in order to constitute a statute a public act,

that it should be equally applicable to all parts of the State. It is sufficient, if it extends to all persons doing or omitting to do an act within the territorial limits described in the statute." p. 917, sec. 802. And to the same effect is Dwarris on Statutes. See Potter's Dwarris, 52, *et seq.*

Potter, in giving his division of statutes, divides them thus: "public and private; declaratory and remedial; perceptive, prohibitive, permissive and penal; temporary and perpetual."

Bouvier, in his Law Dictionary, Vol. 2, p. 573, defines "temporary" thus: "that which is to last for a limited time, as, a temporary statute, or one which is limited in its operation for a particular period of time after its enactment; the opposite of perpetual."

The distinction, then, seems plain—a local or special statute is limited in the objects to which it applies; a temporary statute is limited merely in its duration, and, necessarily, a local or special law may be perpetual, or a general law may be temporary. This, therefore, is a temporary general law, and not within the prohibition of the section referred to.

Entertaining these views, it follows the judgment below must be affirmed.

*Judgment affirmed.*