## JOSHUA C. KNICKERBOCKER

### v.

### THE PEOPLE ex rel. Otto C. Butz.

*Filed at Ottawa March 23, 1882.*

1. PROBATE COURTS—*constitutionality of the act restricting them to counties having a population of 70,000 or more, thereby excluding some counties which have a population exceeding 50,000.* Section 20 of article 6 of the constitution of 1870 declares: "The General Assembly may provide for the establishment of a probate court in each county having a population of over 50,000." This is construed to mean that the General Assembly may, in its discretion, establish a probate court in any one or more of the counties in the State, at any time it may deem proper, subject only to the limitation that such court can not be established in any county which has not a population exceeding 50,000.

2. So it is *held*, the act of 1877, "to establish probate courts in all counties having a population of 100,000 or more," and the amendatory act of 1881 extending the provisions of the act of 1877 to all counties in the State having a population of 70,000 or more, are constitutional, notwithstanding the fact that there are counties in the State which contain a population of over 50,000, but do not contain a population of ·70,000, and so are excluded from the operation of either of the acts.

3. SAME—*effect of sec. 29 of art. 6, in respect to uniformity of laws concerning courts.* Section 29 of article 6 of the constitution, prescribing the rule of uniformity in respect to all laws relating to courts, is not to be understood as a limitation upon the power of the legislature, as conferred by section 20 of that article, to establish probate courts at such times as it may think proper, and to determine the necessity for such a court in any particular instance. The only object of section 29 was to prohibit special legislation concerning certain matters affecting courts, in all cases where the object of the legislature could be attained by the adoption of a general law. The purpose was to require all laws relating to "the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade," to be general and uniform, and that was all the effect intended to ·be given to it.

4. SAME—*as to special legislation.* In giving a construction to the 20th section, in respect to the power of the legislature to establish probate courts, it may be considered, that if the intention of the framers of the constitution in that regard can not be given effect without special legislation, then the provision of the constitution prohibiting special legislation in all cases where the same end can be accomplished by a general law, will have no application.

5. SAME—*of authority in respect to one or more of several objects—as involving a rule of construction.* It is a general rule, that where one is

authorized to do a particular act, or exercise some special privilege with respect to a number of objects taken distributively, which the donee of such authority may exercise or not, as he shall think proper, and there is no specific limitation to the contrary, the right to exercise the authority with respect to one or more of such objects will not be dependent upon its exercise as to the remaining objects.

6.  SAME—*implication as to the mode of executing an express power.* Where there is a grant of power, everything essential to the exercise of the power, not specifically mentioned, will be deemed to have passed by implication.

7.  CONSTITUTIONALITY OF A STATUTE—*of the argument ab inconvenienti.* In considering the question of the constitutionality of an act of the legislature, the argument *ab inconvenienti* should have little if any weight. Considerations of this character may well be regarded as affording the strongest reasons why the court should act with great caution and mature deliberation, but can have no influence upon the determination itself.

8.  In a clear case of the unconstitutionality of a statute, such an argument can have no controlling influence whatever. In doubtful cases there is authority sanctioning the doctrine that it may be invoked, yet that is rather plausible than forcible, for if a statute be clearly unconstitutional no considerations of inconvenience or hardship can be entertained, and if there is a reasonable doubt upon the question, the act should be sustained, without reference to any evil consequences which might have followed a different result.

APPEAL from the Criminal Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. GEORGE W. SMITH, Mr. W. C. GOUDY, Mr. JOHN P. WILSON, and Messrs. ROSENTHAL & PENCE, for the appellant. Messrs. DECKER & DOUGLAS, Mr. CONSIDER H. WILLETT, and Mr. JOHN W. WAUGHOP, also presented briefs on the same side.

Mr. JAMES McCARTNEY, Attorney General, and Mr. EDWARD OSGOOD BROWN, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a judgment of ouster, rendered by the Criminal Court of Cook county, upon an information in the nature of a *quo warranto*, against Joshua C. Knickerbocker,

from the office of judge of the probate court of Cook county, on the alleged ground the act of the legislature providing for the establishment of probate courts is unconstitutional and void. The title of appellant is not questioned on any other ground. It is conceded, if the act is constitutional the judgment of the court below should be reversed. On the other hand, it is agreed that if it is unconstitutional the judgment should be affirmed. It will therefore be perceived that the only question presented for our determination, is the constitutionality of the law establishing those courts.

By the first section of the act of 1877, entitled "An act to establish probate courts in all counties having a population of 100,000 or more, to define the jurisdiction thereof, and regulate the practice therein, and to fix the time for holding the same," it is provided, "that there shall be established in each county of this State now created and organized, or which may be hereafter created and organized, and which has a population of 100,000 or more, a court of record, to be styled, 'the probate court of (name of) county.'" The amendatory act of 1881 simply modifies the first section of the act of 1877 above recited, so as to extend its provisions to all counties in the State having a population of 70,000 or more. (See Session Laws of 1881, p. 72.) It is manifest that if the first section of the original act can not be maintained on constitutional grounds, there is nothing in the amendatory act that relieves it from that objection, and the converse of this proposition must be accepted as true. We shall therefore, for the sake of convenience and of avoiding prolixity, as far as possible treat these acts as but a single act.

Counsel for appellant have pressed upon the attention of the court, with much earnestness and in strong terms, the supposed inconveniences and great hardships that will probably result from holding the act in question unconstitutional, as a reason why such a construction should not be given to

it.   The argument of *ab inconvenienti* should have but little weight, if any, in solving the question before us.   Considerations of this character address themselves to the official duty and conduct of the court, rather than to the question in hand. While they afford the strongest reasons why the court should act with great caution and mature deliberation in the consideration of the case, yet they do not throw a particle of light upon the vital question upon which it depends.   It is not claimed that considerations of this character can have any controlling influence in a case where the act of the legislature is clearly unconstitutional, but it is urged they may be looked to in doubtful cases.   This view has the sanction of authority, yet it is rather plausible than forcible, for where an act of the legislature is manifestly unconstitutional, it is the duty of courts to so hold, however disastrous the consequences may be.   On the other hand, if there is a reasonable doubt as to its unconstitutionality, the act should be sustained, whether any evil consequences would flow from holding it invalid or not.

The validity of the act in question involves a construction of the provisions of the constitution relating to the distribution of the judicial power of the State, and the establishment of courts therein, and also of other provisions supposed to have more or less bearing on the question in hand.   Section 1, article 6, of the constitution, provides:   "The judicial powers, *except as in this article is otherwise provided,* shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in and for cities and incorporated towns."   It is clear, if the constitutional convention had not in other portions of the constitution provided for courts other than those specified in the first section, the power of the legislature to establish courts would be confined to such courts as are specifically enumerated in that section; but the convention, as indicated by the exception in the introductory

part of the first section, proceeded to provide for the establishment of other courts not enumerated in the first section. The 11th section provides for appellate courts, the 20th for probate courts, the 23d for the Superior Court of Cook county, and the 26th for the Criminal Court of Cook county.

These several sections, so far as they relate to the power of the legislature to establish courts, must be construed precisely in the same way as if all the courts had been enumerated in the first section, and the words, "*except as in this article is otherwise provided,*" had been omitted. In that case the enumeration in the first section would have exhausted the entire judicial power of the State, whereas, as the constitution is constructed, it is only exhausted by the enumeration as contained in the 1st, 11th, 20th, 23d and 26th sections, and the legislature is authorized to provide for the establishment of these courts, subject to any limitations that may apply to them respectively, but for no others.

Section 20, of article 6, of the constitution, which authorizes the legislature to provide for the establishment of probate courts, is as follows: "The General Assembly may provide for the establishment of a probate court in each county having a population of over 50,000, and for the election of a judge thereof, whose term of office shall be the same as that of the county judge, and who shall be elected at the same time and in the same manner. Said courts, when established, shall have original jurisdiction of all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators, and settlement of their accounts, in all matters relating to apprentices, and in cases of the sales of real estate of deceased persons for the payment of debts." Appellees insist that under this section the legislature has no power to authorize the establishment of such a court in any county, notwithstanding the number of its inhabitants may be ten times 50,000, and the necessities of business may absolutely demand it, except

upon the condition it at the same time and by the same act
provides for like courts in all other counties in the State
having a population in excess of 50,000, however small that
excess may be, although the people of such other counties may
neither need nor desire the establishment of such courts in
them.   Whatever the framers of the constitution may have
intended by this section, it is clear they have not, in express
terms, said what appellees impute to them.   The construc-
tion contended for can only be reached by interpolating
terms which the convention did not use, and which, we
think, are not warranted by the context.   It is but reason-
able to assume that it was intended by the framers of the
constitution that these courts should be created from time to
time, as the wants of the people and business necessities
might require, subject to the qualification they were not to
be established in any county not having a population in
excess of 50,000.   By this limitation upon the power of
the legislature to establish such courts, the authors of that
instrument determined in advance there never would be any
necessity for this class of courts in counties not having a
population in excess of 50,000.   As to all other counties,
the whole subject was left under the control of the legislature,
to the same extent as if no limitation had been imposed.
The legislature was left entirely free to establish such courts,
or not.   Doubtless the convention, in leaving this matter
within the discretion of the legislature, expected and intended
that it would be exercised wisely, and in furtherance of the
best interests of the people of the respective counties in which
such courts might, or might not, be created.   It is altogether
unreasonable to suppose that it was intended that these
courts should be established in counties having no need for
them, although they might have a population of something
over 50,000, or that it was intended that counties having a
need for such courts, by reason of having several hundred
thousand inhabitants, should be deprived of them merely

because there might be other counties, not excluded by the limitation, that have no need or desire for such courts. To create a court of this kind in a county that has no need for it, is to impose an unnecessary burden upon the people, and to refuse to establish one in a county having the requisite population, when the necessities of the people require it, is to deprive them of a right the framers of the constitution evidently intended to secure to them, and we can not, therefore, sanction a construction which leads to either of these results.

We are unable to discover anything in the terms used by the convention to authorize the construction contended for. The language used is, "the General Assembly may provide for the establishment of a probate court in each county having a population," etc. When *may* the legislature do this? Neither this section nor any other portion of the constitution affords an answer, in express terms, to this inquiry, yet the implication as to what the answer should be is so strong as to hardly admit of serious doubt. The constitution having authorized the legislature to establish one of these courts in each county of the State, subject to the limitation with respect to population, and having fixed no time for the exercise of such authority, the clear and necessary implication is, that the framers of the constitution intended the legislature should determine for itself when and under what circumstances it would exercise the authority conferred.

It is conceded by counsel on both sides that this, as well as all other provisions of the constitution, must be read and construed, if it can be done without involving an inconsistency or absurdity, in the popular and ordinary sense in which the people understood it when voting for it. Applying this test to the provision in question, we have no doubt of the correctness of the construction we have given it. To illustrate: Suppose a farmer having several flocks of sheep, with a view of stimulating his son, who has charge of them, to greater

care and watchfulness in their management, says: "My son, you may, if you desire, sell and appropriate to your own use one-fifth of the annual increase in each of my flocks." Now, no one, we presume, would contend for a moment that the right of the son, in the case supposed, to appropriate the increase in one flock, would, in any sense, depend upon the exercise of a similar right as to the others. He would not be bound to avail himself of the right at all, or he might exercise it as to all or any number of the flocks less than all. Again: Suppose the owner of several tracts of lands says to his neighbor: "You are authorized to enter upon each tract of my land for the purpose of getting your fire-wood." Here, as in the other case, the licensee would not be bound to exercise the authority conferred upon him at all. But suppose he does enter upon one tract for the purpose authorized, without entering upon the others also, would any lawyer contend for a moment that he was not fully justified in doing so? Clearly not. We might go on indefinitely suggesting familiar examples which might occur in the ordinary transactions of life, as illustrative of the common understanding and use of the language under consideration, and sustaining the construction we have placed upon it, but it is unnecessary to do so. In short, it is believed to be a general rule that where one is authorized to do a particular act, or exercise some special privilege with respect to a number of objects taken distributively, as in the case before us, which the donee of such authority may exercise, or not, as he shall think proper, and there is no specific limitation to the contrary, the right to exercise the authority with respect to one or more of such objects will not be dependent upon its exercise as to the remaining objects.

Holding then, as we do, it was the intention of the framers of the constitution that the legislature, in giving effect to the section under consideration, should be guided entirely by the wants and necessities of the people, with respect to such

courts, in the several counties in the State having the requisite population, it follows, the other provisions of that instrument must be so construed as to give effect to that intention, and if this can not be done without special legislation, the provision of the constitution prohibiting special legislation in all cases where the same end can be accomplished by a general law, will have no application. So, in this view, we deem it unimportant whether the act creating the probate court of Cook county be regarded as a general or special law, for it is a familiar principle, where there is a grant of power, everything essential to the exercise of the power not specifically mentioned will be deemed to have passed by implication.

The only other provision of the constitution which we deem important to notice is section 29 of article 6. It is as follows: "All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform." As already indicated, this section must not be so construed as to defeat the objects intended to be accomplished by the adoption of the 20th section. The latter section, as we have just seen, provides for the establishment of a certain class of courts by the legislature in such counties in the State having a population in excess of 50,000, as the legislature in its discretion may deem necessary for the best interests of the people of those counties. The time of creating, and the necessity for, such a court, in any particular instance, having been left entirely to the discretion of the legislature, the 29th section could not have been intended to modify the 20th section in either of these respects. That section, therefore, can have no reference to the creation of courts of the kind we are considering, and the general terms in which it is conceived, must be so construed as to harmonize with and

give effect to the 20th section, in the sense we have construed it.

It is manifest that the introductory clause of that section can not be given effect according to the literal meaning of the broad terms in which it is conceived. To do so would lead to the most absurd consequences, and would be in direct conflict with the decisions of this court. The words are: "*All laws relating to courts shall be general, and of uniform operation.*" Notwithstanding this provision the legislature is constantly in the habit of passing special laws fixing the commencement and the length of the terms of particular courts, which are manifestly laws relating to courts, and such acts, though neither uniform in their operation, nor general, within the sense of the constitution, are universally recognized as constitutional and valid. In discussing this matter, it was said, in *Karnes* v. *The People*, 74 Ill. 274: "Constitutions, like all other laws, must have a reasonable and practical interpretation. To give this language a literal application would require all courts in the State to meet on the same day, and the terms to be of the same length. This could not have been intended, because it must have been apparent to the framers of that instrument that such a thing could never be carried into effect."

The only object of the section of the constitution we are now considering was to prohibit special legislation with respect to certain matters affecting courts, in all cases where the object of the legislation could be attained by the adoption of a general law. By this section, as clearly appears from the concluding clause, all laws relating to "the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade," are required to be general and uniform, and this was all the effect that was intended to be given to it by the framers of the constitution. This being its proper construction, it follows that the right of the legislature to establish a probate court for Cook county, or any

other county having the requisite population, as provided by
the 20th section of the constitution, is not at all modified or
limited by that section.

The judgment of the Criminal Court of Cook county is
reversed, and the cause remanded, with direction to that
court to quash the information.

*Judgment reversed.*

Mr. JUSTICE SCOTT, dissenting:

As the questions involved in this case are of unusual
importance, I deem it proper I should state at length the
reasons, or at least some of them, for dissenting from the
conclusion reached by a majority of the court.

In all investigations of legal matters it is well first to
ascertain accurately the exact question in controversy. The
decision in this case involves the determination whether the
act of the General Assembly of 1877, "to establish probate
courts in all counties having a population of 100,000 or
more, to define the jurisdiction thereof, and regulate the
practice therein, and to fix the time of holding the same," is
constitutional. The act has relation to a class of counties
having a population of 100,000 or more. It is so limited by
the express terms used. No question as to the power of the
General Assembly to establish a probate court in any one of
the counties in the State, by name, having a population of
over 100,000 inhabitants, is involved. It will be time enough
to discuss that question when the legislature shall assume to
enact any such statute. The legislature has never assumed
to establish a probate court in any county, by name. If it
shall be now held, by judicial construction, the act of 1877
establishes a probate court in Cook county, as by name, it
is, in effect, to do that which the legislature never assumed
to do in that way; and more than that, the acts of 1877 and
1881, in relation to probate courts in counties having a popu-
lation of 100,000, and of 70,000 or more, are legislative

constructions, most solemnly expressed, that the General Assembly possesses no power to establish probate courts in any one of the several counties having a population of over 50,000 inhabitants, by name, and by special act. On both occasions the General Assembly undertook to classify the counties by population, and to establish probate courts therein, by a general law. Thus it is seen the General Assembly, in every instance where it has spoken on the subject, has utterly ignored the position taken in this case, that the legislature may at any time establish a probate court in any one of the counties having over 50,000 inhabitants, by a special law. Its previous acts are equivalent to a disclaimer of any such power under the constitution. A construction uniformly given by the legislative department to a constitutional provision ought not to be disregarded by the courts, except for the clearest and most cogent reasons.

It may also be well, before entering upon the discussion of the principal question, to ascertain the definition of a "general law," as those terms are used in the constitution of 1870. This court has heretofore adopted a definition formulated and sanctioned by decisions of courts and text writers. No new principle is declared when it is stated "general laws are those which relate to or bind all within the jurisdiction of the law-making power, limited as that power may be in its territorial operation, or by constitutional restraints." *The People* v. *Cooper*, 83 Ill. 585; Sedgwick on Stat. and Const. Law, p. 30. A law applicable to all counties of a class, as made or authorized by the constitution, is neither a local nor a special law. If it applies to all the counties of a class authorized by the constitution to be made, it is a general law, and whether there may be few or many counties to which its provisions will apply, is a matter of no consequence. A principle analogous with this was declared in *The People* v. *Wright*, 70 Ill. 388, and in *Jefferson County* v. *Jones*, 63 id. 531, it was recognized.

Another principle ought not to be lost sight of in this discussion. It is, that the General Assembly possesses no power to classify counties, for legislative or other purposes, in any manner other than as is provided in the constitution it may be done. Any classification of counties otherwise than as authorized by the constitution, is invalid, and a law applicable to such classification is a local or special law, and is forbidden by the constitution, and is, therefore, void. This principle has been twice declared by the decisions of this court, and must now be regarded as the settled law of this State. *Devine* v. *Commissioners*, 84 Ill. 594; *Worcester* v. *Cheney*, 94 id. 470. Keeping these plain definitions constantly in view, the subsequent discussion of the principal question will be more readily understood.

Section 1, art. 6, of the constitution, declares, "the judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns." Reading this section of the constitution in connection with the remaining sections of the same article, as must be done, it will readily be seen what courts are created by the constitution, and what courts may be created by law. It will be noted the General Assembly may by law create courts "in and for cities and incorporated towns," and after the year 1874, "inferior appellate courts, of uniform organization and jurisdiction, may be created in districts to be formed for that purpose." All other courts in which the judicial powers of the State are vested are created by the constitution itself. In this connection it may be remarked, that all courts created by the constitution, except justices of the peace and police magistrates, are given a defined jurisdiction, of which they may not be deprived by the General Assembly.

It is made the duty of the General Assembly to provide for the organization of all courts created by the consti-

tution, and provide for the election of judges, and the times and places of holding such courts, where it is not done by the provisions of that instrument. This duty is absolute and imperative with regard to all courts created by the constitution, except as to probate courts in counties having over 50,000 inhabitants. With regard to probate courts in such counties, the General Assembly has a discretion as to the *time when* it will provide for the organization of such courts and the election of judges thereof, but it has no discretion as to how such courts may be established. That is fixed, absolutely and positively, as will be made to appear, by the constitution itself. Other courts provided for by the constitution, and not mentioned by name in the first section of article 6, are the "Superior Court of Cook county," and the "Criminal Court of Cook county." A correct reading, therefore, of the whole of the 6th article of the constitution, concerning the judicial department, is, that the judicial powers of the State are vested in one Supreme Court, in circuit courts, county courts, in justices of the peace, police magistrates, the Superior Court of Cook county, the Criminal Court of Cook county, in probate courts in counties having over 50,000 inhabitants, and in such courts as may be created by law in and for cities and incorporated towns, and after the year 1874, in inferior appellate courts, when created by law. It is apparent, then, that probate courts are created, in counties having over 50,000 inhabitants, in precisely the same manner as are circuit courts in the several counties, and as is the Superior Court of Cook county. This would seem to be so plain as to admit of no construction. That which is plainly expressed, admits of no interpretation. But if contemporaneous construction is worth anything, and it is conceded it sometimes renders most valuable aid, it may be found in the debates of the constitutional convention. When article 6, concerning the judicial department, was under discussion, section 1, being then in the exact form it now is, Mr. Archer

said: "I move to amend, by inserting after the words 'county courts,' in the second line, the words 'probate courts.' I think this section does not now recognize probate courts." Mr. Browning (than whom the convention contained no abler jurist) said: "This article does provide for judges in counties having a population in excess of 50,000. 'The judicial power, except as in this article is otherwise provided, shall be vested,' etc., and it has otherwise provided for probate courts." Mr. Archer then said: "But only in counties having over 50,000 people. Does that provide for counties having less than 50,000?" To which Mr. Browning replied: "In those counties it is vested in the county courts, so that all are provided for." Mr. Archer then said: "With that understanding I withdraw the amendment." Vol. 1 Const. Debates, p. 976.

The fact the constitution vested the judicial powers of the State in certain courts named, and in such courts as may be created by law, in the manner specified, is a limitation upon the power of the General Assembly to establish other courts it is not at liberty to disregard. Only power is given to the legislature to *create* courts in and for cities and incorporated towns, and after the year 1874, to create inferior appellate courts in districts to be formed for that purpose. All other courts in the State that may rightfully exercise judicial powers are created by the constitution. It is made the duty of the General Assembly to provide for the time of holding courts in each county, (that is, circuit courts,) and it is apprehended that no election for circuit judges could have been held, under the constitution of 1870, until the legislature had fixed the boundaries of the several circuits, unless, perhaps, for circuit judges in Cook county, as that county is, by the constitution, made a circuit by itself. Nor can there be any election for judges of probate courts, in counties having over 50,000 inhabitants, until the General Assembly shall so provide.

It has been seen the legislature has a discretion as to the *time when* it will establish probate courts in counties having over 50,000 inhabitants, but in no other respect. How, then, may probate courts be established? The constitution has definitely declared, and its mandate must be observed. Section 20, article 6, provides, the General Assembly may provide—not *create*, as is erroneously assumed,—for the establishment of a probate court in each county having over 50,000 inhabitants, and for the election of a judge thereof. Observing the previous decisions of this court, how may this be done? Obviously, it can be done in one way only, and that is, by grouping the counties together in a class, as is done by the constitution,—that is, constituting a class of all counties having over 50,000 inhabitants, and providing for a probate court in *each* county of the class, by general law. It can be done in no other way, without an utter disregard of the plain provisions of the constitution. It is an undeniable proposition, that when the constitution has provided a way in which a thing may be done, it is not in the power of the General Assembly to do it in any other mode. It is equivalent to an express limitation upon its powers in that regard. The word *each*, as used in this section of the constitution, is to be understood in its ordinary acceptation. Commonly it is understood to mean "every one of the two or more individuals composing the whole, considered separately from the rest." It is precisely the same word, and is used in the same sense, as it is used in section 14 of the same article, which makes it the duty of the General Assembly to provide for the times of holding a court (that is, a circuit court,) in "each county." Certainly not in any one of them, but in every one of the whole number. That is precisely the sense in which the same word "each" is used in this 20th section of article 6. Had it been the intention the General Assembly might establish a probate court in *any* county having over 50,000 inhabitants, whenever it might see proper to do

so, apt words would, no doubt, have been used to express that intention, as was done in section 13 of the same article, where it is said, when the business of the circuit court of any one or of any two or more contiguous counties, containing over 50,000 inhabitants, shall occupy nine months of the year, the General Assembly may make of *such county* or *counties* a separate circuit. Construing the words "each county," as used in the 20th section of article 6, as meaning *any one* of the counties named, is to utterly disregard the meaning the framers of the constitution attached to the word "each," as used in the context in that instrument, and as it is commonly understood by persons speaking the English language. Courts are not at liberty, in construing a constitution, to suppose one thing or another was meant, unless it is plainly expressed, or arises by necessary implication from unambiguous terms employed. It would be far better there should be no constitution, if courts may construe it to mean one thing or another, as local interests may seem to require or be supposed to demand. Its limitations would be utterly worthless, and less binding than "ropes of sand."

There is no power given to the General Assembly to provide that counties having over 100,000 inhabitants shall constitute a class of counties in which probate courts may be established or organized. The constitutional restriction is, if done at all, probate courts are to be established in "each county" having over 50,000 inhabitants, and this restriction the General Assembly may not disregard. But section 29, of article 6, contains a restriction on the powers of the General Assembly concerning legislation relating to courts, that is equally obligatory. It is, that "all laws relating to courts shall be general, and of uniform operation." The limitation in this regard is absolute and imperative. One of the counsel who has argued the case for respondent with marked ability, has discerned the true meaning of this clause in section 29, and has had the candor to express it.

As he construes it, "it declares that all laws concerning courts shall be general, and of uniform operation. It does not attempt to create courts. It does recognize the context of the article of which it forms a part, and by which it appears that courts are independently or differently constituted. It must therefore relate to courts established or to be established, and it is fair to say it means that courts shall be governed by general laws of uniform application. It has the effect to extend the prohibition against special legislation, found in the article concerning the legislative department, to the cases of courts." Had counsel gone but a single step further, and conceded what another counsel for respondent says is the true construction of section 20, it would follow, as a corollary from his argument, the act under consideration is plainly unconstitutional. His construction is, "in section 20 a probate court is created,—potentially, at least; in every county judicial power is given to such court, and its jurisdiction defined, upon two conditions: Such court may go into operation, first, there must be a population of more than 50,000 in the county; second, the General Assembly must determine that such court is needed, and, being the holder of the public purse, must provide for the same. The words, 'provide for the establishment,' can not, for obvious reasons, mean that the General Assembly is to create the court." Both concessions made by counsel are warranted by correct reading of the constitution, and may be adopted as the true construction of the paragraphs to which they relate. As before observed, probate courts are created by the constitution itself, in each county having over 50,000 inhabitants, in precisely the same manner that circuit courts are created by that instrument in each county of the State. It is therefore apparent, from the provisions of section 29, that all laws relating to courts thus established must be general, and of uniform operation. Any other construction is to render these words of the constitution meaningless.

.When the constitution was adopted, in 1870, there were but few counties in the State that contained a population in excess of 50,000. Since then the population has increased with remarkable rapidity. Now, by the last census, there are at least six counties that contain a population in excess of that number. When the census shall be taken at the end of the present decade, many more counties will appear to have a population of over 50,000. As counties obtain the requisite population, the constitution, by its own force, extends over and creates a probate court in each of them, in precisely the same manner as the act of 1875, to increase the number of judges of the Superior Court, took effect and became operative when it was ascertained by the census of 1880 Cook county contained a population in excess of 400,000. Should the present constitution stand—which, of course, is not at all probable—until every county contained a population in excess of 50,000, it would be true, as counsel in effect concedes, that the constitution creates a probate court,—potentially, at least,—in every county in the State. It is doubtless true, that when the census shall be taken at the end of the present decade, it will appear very many counties will have a population that will secure to them the privilege of a probate court; and it may also be true that before the end of a second decade LaSalle and St. Clair counties may have a population in excess of 100,000, and under the act of 1877, if it shall stand, would be entitled to a probate court as well as the county of Cook, and if the amendatory act of 1881 is a valid law, it is doubtless true that counties other than LaSalle and Cook, before the expiration of that period, will have a population that will entitle them to a probate court under that law. The argument made in this connection, that section 20 of article 6 was introduced into the constitution that Cook county alone might have a probate court, and that no other county in the State needs such a court, is as idle as it is foolish and absurd. It can not be

judicially known that other counties do not desire or need such a court as well as the county of Cook. But that is a matter of no consequence. The constitution has provided, probate courts, when established, if done at all, are to be in each county having over 50,000 inhabitants, and it is not for the courts or the legislature to say that only one or two of the whole number of counties entitled to such courts really, in fact, need them. That is a question concerning which the General Assembly has no discretion.

It is but stating an admitted truth to say that all limitations imposed by the constitution must be observed by the General Assembly and the courts. Any law, therefore, having special application to any one or more counties less than the whole number of counties having over 50,000 inhabitants, which must constitute a class of counties in which probate courts may be established, is a local or special law, and is void, as being inhibited by the constitution. *Devine* v. *Commissioners*, 84 Ill. 594. A law providing all counties having a population of over 100,000 shall constitute a class in which probate courts may be organized, would apply only to Cook county, as definitely as though limited by express terms to that county. Should counties having a population of over 70,000 be grouped together as a class, this court judicially knows such a law would and could apply to only two counties in the entire State, viz: Cook and LaSalle counties. Counsel, with commendable candor, concede that which is the true construction of the constitution: that the clause of section 29, article 6, that declares, "all laws relating to courts shall be general, and of uniform operation," has the effect to extend the prohibition found in the article concerning the legislative department, to the cases of courts, or it is as if there were added to section 22 of article 4 the further enactment, so that it might read, "the General Assembly shall not pass local or special laws * * * concerning the organization, jurisdiction, practice or process of courts which this

constitution permits to be established." It would therefore seem clear, that any law applicable to one of a class would be local and special, for the reason such county constitutes only a part of the class of counties in which the constitution provides probate courts may be established. It is known St. Clair, McLean, Adams and Peoria counties each contains a population in excess of 50,000, and any classification of counties for legislation in regard to probate courts, that by its terms excludes those counties from its operation, is a local law, and is forbidden by the constitution. It is, as has been seen, for the reason the constitution has declared *each* county having a population of over 50,000 may have a probate court established therein, and the legislature possesses no rightful authority to make any other or different classification of counties for that purpose.

Considerations as to the serious results that might flow from holding the law in regard to probate courts in counties having a population in excess of 100,000, unconstitutional, have been pressed on the attention of the court with unusual zeal. Should serious consequences result from such a decision, it would be indeed much to be regretted. Evil results, if any there would be, would be confined to a single locality. But be the results what they may, it can not authorize an erroneous construction of the constitution by a court of last resort. It should be remembered this court is called upon, under the highest possible sanctions, to construe the constitution for the people of the entire State and the interest of the entire State, and not for that of any particular locality. Infinitely more serious consequences would flow from any toleration by this court of any infraction of the constitution that would permit the enactment of local or vicious special legislation, far more injurious to the people of the State, whose laws this court is obligated to administer, than any mere temporary inconvenience the people of any locality would suffer in consequence of declaring a local law uncon-

stitutional. This court, in more than one instance, has assumed to exercise this extraordinary power, and no serious consequences have followed, but, on the contrary, none but the best results have come from a rigid adherence to the limitations imposed by the constitution. The only line of safety lies in a strict adherence to all constitutional limitations. Believing, as I do, the act of the General Assembly under consideration is in plain and obvious conflict with the constitution, I should be wanting in self-respect if I did not express that belief in the strongest possible terms. The evils most to be avoided are not the loss of property and temporary inconvenience to the people of a particular locality, but a more serious disaster is the giving a construction to the constitution that would authorize a flood of local and vicious special legislation in behalf of any locality that might demand it. This, indeed, would be an evil of such magnitude it would be most desirable it should be avoided. Any toleration by this court of any violation of the constitution weakens the value of its limitations, no matter how necessary and essential they may be to the preservation of public and private interests.

But the consequences. to flow from holding the act under consideration unconstitutional, have been much over-stated and exaggerated. Nothing is hazarded in saying, the suggestion the acts of the officer administering the office of judge of the probate. court in Cook county were void, has absolutely nothing in its support, either in law or reason. Although the law under which he was elected may have been unconstitutional, it is a principle of universal application the acts of a *de facto* officer administering any office are valid, and will be so held until the incumbent is ousted from the same by some proceeding instituted for that purpose. The affairs of government could not be administered if this were not the law. Irregularities in the election of officers must frequently occur, but the interests of the public will not be allowed to

suffer on that account. A vice common to all the arguments made in behalf of respondent, with one exception, lies in the assumption the General Assembly *created* the probate court in counties having the requisite population, as specified in the act under consideration. It is erroneously stated the information in this case is filed to test the constitutionality of the act of 1877, "creating and establishing" probate courts in counties having a population of 100,000 or more. Neither the word "create," nor "creating," is found in the enacting clause of that statute. Nor is it true the legislature ever assumed to create such a court. It has no power to do so. As has been seen, the constitution itself *creates* probate courts in counties containing the requisite population, in like manner as circuit courts are created by that instrument in each county. Past all doubt, where an office exists under the constitution, or otherwise, the acts of the incumbent, although his appointment or election may have been under an unconstitutional law, will be as valid as the acts of an officer *de jure*. This is not a declaration of any new principle of law. In *The People* v. *Bangs*, 24 Ill. 184, it was held a circuit judge elected under an unconstitutional statute had color of office, and that his acts as such officer were as valid as if the law had been constitutional. That is precisely the case here, and the principle of the case cited ought to control in the case at bar. The office, the function of which respondent assumed to exercise, existed by the constitution, as did the office in the case of *People* v. *Bangs*, and the same conclusion is warranted, as in that case, the acts of the incumbent done under color of office will be valid.

In my opinion the judgment should be affirmed.

Mr. JUSTICE WALKER: I concur fully with my brother SCOTT in the views presented in his dissenting opinion in this case.