(No. 23053.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MACHIR J. DORSEY *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1936—Rehearing denied June 3, 1936.*

WILSON, J., dissenting.

BRUCE A. CAMPBELL, GERALD T. WILEY, EVERETT JEN-
NINGS, HARRY OLSON, and SANFORD OLSON, for plaintiffs
in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY,
State's Attorney, and A. B. DENNIS, (ROBERT E. WRIGHT,
C. VERNON THOMPSON, and JOHN T. GALLAGHER, of coun-
sel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Machir J. Dorsey, Edwin Hult, Harry W. Huttig and
C. Edwin Johnson were convicted in the criminal court of
Cook county of conspiracy. The writ of error herein was
sued out and Huttig subsequently died.

Fourteen counts of the indictment, respectively, charge
a conspiracy to obtain by fraudulent pretenses the money
and property of the Security Life Insurance Company,
the Northern States Life Insurance Company, their policy-
holders, the Keystone Holding Company, and Edwin Hult
& Co., of the value of $1,700,000. The other four counts
charge a conspiracy to buy for such corporations securities
and property owned and controlled by the alleged conspira-
tors, at an exorbitant and extortionate price far in excess
of their value.

The defendants moved to quash the indictment on the
ground that the grand jury which returned it was illegal,
because sections 8 and 9 of the Jury Commissioners act
(Ill. State Bar Stat. 1935, chap. 78, p. 1969,) provide for
period jury lists and offer prospective jurors an opportunity
to indicate at what time of the year they can most con-
veniently serve. Section 9 provides that whenever a grand
jury is required it shall be drawn and certified in the same
manner as petit jurors are drawn and certified. It is urged
that these sections contravene the provisions of section 22
of article 4 of the constitution which forbid the General
Assembly to pass local or special laws for summoning and

impaneling grand or petit jurors, and that they contravene section 29 of article 6 of the constitution, which provides that all laws relating to courts shall be general and uniform in operation, and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, shall also be uniform.

The trial court properly overruled the motion to quash. Similar objections to the Jury Commissioners act were presented to this court in *People* v. *Onahan,* 170 Ill. 449, soon after the passage of the act, and it was held that while the act affected only Cook county, it was neither special nor local because by its terms it was applicable to all counties containing more than one hundred thousand inhabitants, and that it did not offend against section 29 of article 6 because the selection of petit jurors and grand jurors is not a necessary incident to the organization, jurisdiction, powers, proceedings and practice of courts. In *Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504, we held that for a law "to be general it is not necessary that an act operates in every place or upon every person in the State, but if every place or person brought within the relations or circumstances provided for is affected by the law, the act is general." We held further, that the Jury Commissioners act, in so far as it provides for the preparation and selection of jurors, "does not relate to or affect the proceedings or practice of the court and does not violate either section of the constitution in controversy."

A bill of particulars was filed, which set forth that Huttig, Lee, McConnell, and J. H. Benjamin, who was not indicted, were stockholders, officers or directors of the Manufacturers Terminal Company; that said company owned certain property in Lake county, Illinois, hereinafter referred to as the Waukegan property; that it was encumbered in the amount of $383,750, and that the equity in it was of little or no value. The only crime set up in the bill of particulars is, that the defendants unlawfully con-

spired together and with others to divide the Waukegan property into small parcels, to place thereon fraudulent and worthless mortgages or trust deeds, and to sell the property and the mortgages or trust deeds to, or to borrow money thereon from, the Northern States Life Insurance Company, the Security Life Insurance Company and other persons, firms and corporations.

The Waukegan property consists of twenty-nine or thirty acres of land fronting upon Lake Michigan, a part of which extends a short distance into the lake. There were approximately twenty-nine buildings on the property for business and manufacturing purposes, ranging in height from one to seven stories, constructed mostly of brick or cement. The property was developed by the Corn Products Refining Company and occupied by it until 1916. After an explosion and fire in that year the property was conveyed to the Manufacturers Terminal Company, a corporation in which I. J. Finkelstein was largely interested, subject to a purchase money mortgage of $150,000. James H. Benjamin became associated with Finkelstein, and after Finkelstein's death claimed to have a contract for the purchase of the property. At that time there was an unpaid balance of $115,000 on the Corn Products Refining Company mortgage and a second mortgage to I. J. Rosenberg for $88,750. Litigation with Finkelstein's widow resulted in a settlement, whereby Mrs. Finkelstein took a third mortgage for $145,000, and all the stock of the Manufacturers Terminal Company was assigned to Benjamin.

Benjamin made an application to the Old Dearborn State Bank of Chicago for a loan of $1,500,000 on the property. A tentative commitment was made by the bank, but was later rescinded because George F. Cremm, who had charge of the security business for the bank, said he had lost confidence in Benjamin for misrepresenting certain matters. He denied that the refusal was due to lack of property value. Thereafter negotiations were opened with

the Northern States Life Insurance Company for .a loan of $1,500,000. Dorsey, the president of that company, said it could not absorb a loan of that amount and that under the law of Indiana it could not take part of a loan. It was finally arranged that separate appraisals of different parcels of the property should be made, which was accordingly done and separate mortgages to the amount of $1,702,000 were executed covering the property, of which $500,000 was to be paid to the Chicago Title and Trust Company to satisfy the three prior incumbrances. Those incumbrances were afterwards satisfied. The Northern States Life Insurance Company acquired $817,000 of the securities. Some difficulty was experienced in disposing of the remaining $885,000 of securities and they were canceled. First mortgages on portions of the property were made to Huttig for $250,000 to secure Benjamin's indebtedness to him. Other mortgages subject to Huttig's mortgages were afterwards executed to take the place of the canceled mortgages for $885,000. Of this amount $450,000 was sold to the Security Life Insurance Company and the remaining $435,000 was pledged to that company to secure an obligation of Hult & Co. to it and in consideration of its assuming the Huttig mortgages. Prior to all these transactions an appraisal of the properties was made by Coats & Burchard, appraisers, whose qualifications and integrity are admitted. The report of the appraisal as of February, 1928, showed a net sound value of $3,587,272.80, and that if proposed repairs and betterments were made, the depreciation charged would be considerably reduced and the net sound value increased. The subsequent appraisals of the separate tracts were also made by that firm. Other appraisals of the property were made by examiners for the insurance department of the State of Indiana in coöperation with representatives of the insurance departments of Iowa, Minnesota and North Dakota, and by Harry E. Johnson and George A. R. Titman, resident fee-holders. Be-

fore the Security Life Insurance Company acquired the mortgages held by it an additional appraisal of the parcels described therein was made by Charles Benson. All of the appraisals showed values equal to or in excess of that made by Coats & Burchard, which was introduced in evidence by the prosecution.

It is apparent there was testimony fairly tending to prove the property had a very large intrinsic value and that the notes and mortgages were not fraudulent and worthless. The defendants Dorsey and Johnson tendered three instructions which were intended to charge the jury that the prosecution was limited to the question of whether or not the securities were fraudulent and worthless, as set forth in the bill of particulars, but the court refused to give these instructions. The object of a bill of particulars is to give the defendant notice of the specific charge against him and to inform him of the particular transactions brought in question, so that he may be prepared to make his defense. (*People* v. *Ervin,* 342 Ill. 421; *Cooke* v. *People,* 231 id. 9.) The issue in this case was limited to the conspiracy set forth in the bill of particulars. (*People* v. *Bain,* 359 Ill. 455.) However, the court submitted the case not upon that charge but upon the charge that the loans were extortionate and exorbitant. None of the given instructions refer in any way to the bill of particulars or to the charge set forth in it. Obviously, the defendants were entitled to have the jury instructed on the issue as to which the prosecution was limited and upon which they were tried, and not upon some other and different issue.

It is unnecessary to consider the other grounds urged for reversal.

The judgment of the criminal court is reversed and the cause is remanded for another trial.

*Reversed and remanded.*

Mr. Justice Wilson, dissenting.