NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190145-U

NO. 4-19-0145

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 22, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| DWAYNE B. HOLLINS, | ) | No. 17CF213 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

_____

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court (1) affirmed defendant's conviction for unlawful delivery of a controlled substance and (2) vacated defendant's sentence and remanded for a new sentencing hearing where the trial court erroneously considered a void conviction when it determined defendant was eligible for Class X sentencing.

¶ 2     Following a December 2018 jury trial, defendant, Dwayne B. Hollins, was found guilty of unlawful delivery of a controlled substance (less than one gram of a substance containing heroin) (720 ILCS 570/401(d) (West 2016)), a Class 1 felony. After determining defendant to be eligible for Class X sentencing, the trial court sentenced him to 12 years in prison.

¶ 3     Defendant now appeals, arguing he is entitled to a new trial because (1) the trial court abused its discretion when it allowed the admission of improper other-crimes evidence and

(2) his trial counsel was ineffective for failing to object to improper other-crimes evidence. Defendant also argues he is entitled to a new sentencing hearing because the trial court improperly considered a void conviction when it determined he was eligible for Class X sentencing. We affirm defendant's conviction, vacate his sentence, and remand for a new sentencing hearing.

¶ 4                               I. BACKGROUND

¶ 5                On December 11, 2017, a grand jury returned two bills of indictment charging defendant with unlawful delivery of a controlled substance within 1000 feet of real property comprising a school (less than one gram of a substance containing heroin) (720 ILCS 570/401(d) (West 2016); *id.* § 407(b)(2)), a Class 1 felony (count I), and unlawful delivery of a controlled substance (less than one gram of a substance containing heroin) (*id.* § 401(d)), a Class 2 felony (count II). The bills of indictment further alleged due to defendant's prior convictions in McLean County case No. 15-CF-419 and Cook County case No. 02-CR-51690, he was eligible for mandatory Class X sentencing under section 5-4.5-95(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-95(b) (West 2016)).

¶ 6                Specifically, the bills of indictment alleged that on October 26, 2017, defendant knowingly delivered less than one gram of heroin to a confidential source, later identified as Jaci Lyle, within 1000 feet of Washington-Monroe Elementary School in Lincoln, Illinois. The Logan County circuit court issued warrants for the arrest of defendant and his codefendant, Tenika Hervey, who was also charged with unlawful delivery in connection with the same transaction. On December 12, 2017, Hervey was arrested at her home located at 1312 ½ North Delavan Street in Lincoln, where it was alleged defendant also lived. Following Hervey's arrest,

Inspector Joseph Meister of the Lincoln Police Department executed a search warrant at the Delavan Street residence. Defendant was arrested in May 2018.

¶ 7                                         A. Jury Trial

¶ 8          Defendant's case proceeded to a jury trial in December 2018. Prior to jury selection, the State orally moved to dismiss count II, which the trial court allowed.

¶ 9                                      1. *Other Crimes Evidence*

¶ 10         After opening statements but prior to the State's presentation of evidence, defense counsel sought to exclude testimony that Lyle purchased drugs from defendant and Hervey on several occasions other than the transaction on October 26, 2017, and used money provided by the police to pay down debt with defendant resulting from those previous drug transactions. The trial court allowed defense counsel's motion, stating that Lyle may testify that she used money she received from police to pay down a debt with defendant, but not regarding drug transactions other than the one occurring October 26, 2017.

¶ 11         Defense counsel additionally sought to exclude evidence that defendant traveled with Hervey to Chicago on several occasions to purchase heroin and cocaine and that Hervey witnessed defendant sell drugs out of her home on several occasions. The trial court rejected defendant's request, concluding that the evidence was relevant to explain "the common scheme and manner in which the transactions were being made by both Ms. Hervey and the defendant allegedly."

¶ 12                                   2. *State's Case-in-Chief*

¶ 13         A summary of the State's evidence follows.

¶ 14                                         a. Jaci Lyle

¶ 15        Jaci Lyle testified she was 44 years old and was in custody due to her pending charges for (1) possession with intent to deliver cocaine and (2) possession with intent to deliver cocaine, heroin, and hydrocodone. In exchange for Lyle's plea of guilty to these charges and her testimony against defendant in this case, the State agreed to a sentencing cap of 12 years in prison. After her arrest in early October 2017, Lyle agreed to work with the Lincoln police department as a confidential informant.

¶ 16        On October 26, 2017, Lyle met with Lincoln police officers, who searched her person and her car. Lyle was then provided with $200 in prerecorded bills and a recording device that she attached to her keychain. She then proceeded to Hervey's home on Delavan Street, where she testified defendant also lived. When no one answered the door, Lyle called Hervey, and defendant let her into the home. Lyle then spoke with defendant in the bedroom privately, and he agreed she could buy one gram of heroin if she put $50 on her "tab." Lyle then went to the living room, where Hervey gave her heroin in exchange for $200. Lyle returned to the location where she earlier met with police and provided the heroin she purchased to Inspector Meister, who searched her person and car again. The State played the recording for the jury, and Lyle identified the black male individual in the recording as defendant. On cross-examination, Lyle admitted that at the time of this transaction, she was addicted to heroin, which she purchased and used daily.

¶ 17                              b. Tenika Hervey

¶ 18        Tenika Hervey testified she was 39 years old and had three felony convictions: two for possession of a controlled substance and one for forgery. Hervey also had a pending charge for possession with intent to deliver, a Class 1 felony carrying a sentencing range of 4 to

15 years in prison. In exchange for her plea of guilty and testimony against defendant in this case, the State agreed to a sentence of 5 years in prison to be served at 50 percent.

¶ 19        In October 2017, Hervey and defendant traveled to Chicago together several times to purchase cocaine and heroin, which they then sold out of her home on Delavan Street. Defendant "stayed" with Hervey during this time for periods ranging from several days to a week. Hervey and defendant typically charged $150 for a "ball" of cocaine and $220 for one gram of heroin. Defendant only sold heroin on a few occasions because he typically "didn't mess with the heroin." Instead, defendant sold the cocaine and Hervey sold the heroin. Hervey gave defendant $150 for each gram of heroin she sold and kept any profit.

¶ 20        The State then introduced People's Exhibit Nos. 3 to 19, which were photographs of Hervey's home. Hervey testified the photos were consistent with how the home appeared in October 2017. People's Exhibit No. 13 was a photograph of various yellow bags on the floor of her home that, according to Hervey, contained defendant's clothing.

¶ 21        On cross-examination, Hervey admitted she was addicted to heroin and was "messed up"—meaning under the influence of heroin—when Lyle came to her home on October 26, 2017. She further admitted that she was purchasing and using heroin on a daily basis at that time, and her recollection was "pretty vague" at times.

¶ 22                        c. Inspector Joseph Meister

¶ 23        Inspector Joseph Meister testified he was a police officer with the Lincoln police department, through which he had a special assignment with the Illinois State Police Central Illinois Enforcement Group, an undercover narcotics task force.

¶ 24        Lyle began working with Inspector Meister as a confidential informant after her arrest in October 2017. During the October 26, 2017, drug transaction described above, Inspector

Meister surveilled Lyle and observed her enter Hervey's residence on Delavan Street. Inspector Meister explained a different officer observed Lyle leaving the home. When Lyle returned, she provided Inspector Meister with a bag of heroin, which was admitted into evidence as People's Exhibit No. 1. Inspector Meister searched her vehicle and person following the transaction and did not discover any other drugs or cash.

¶ 25        On December 12, 2017, Inspector Meister executed a search warrant at Hervey's residence. Inspector Meister took photographs of the residence as it appeared that day, which were admitted into evidence as People's Exhibit Nos. 20 to 27. During the execution of the warrant, Inspector Meister recovered the following objects: a digital scale, plastic bags with corners cut off, a small plastic box containing razor blades, a piece of copper mesh referred to as a "chore boy," a blue pipe, and yellow bags containing men's clothing. Inspector Meister explained that the scale, plastic bags, and razor blades were consistent with selling drugs, while the copper "chore boy" and pipe were consistent with crack cocaine usage.

¶ 26                    3. *Verdict, Post-Trial Motion, and Sentencing*

¶ 27        Following the State's case-in-chief, defendant did not present any evidence. During closing argument, the State argued defendant was responsible for both bringing heroin into Hervey's home and selling it to Lyle on October 26 because Hervey was required to obtain defendant's permission to make the sale.

¶ 28        The jury found defendant guilty. Defendant filed a motion for a new trial, arguing the trial court erred in admitting improper other-crimes evidence during Hervey's testimony. The trial court denied the motion.

¶ 29        During sentencing, the State asserted defendant was subject to mandatory Class X sentencing and presented certified copies of defendant's convictions in Cook County case No.

02-CR-516901 for aggravated unlawful use of a weapon and McLean County case No. 15-CR-419 for possession of a controlled substance. The trial court sentenced defendant to 12 years in prison. Defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 30       This appeal followed.

¶ 31                          II. ANALYSIS

¶ 32       On appeal, defendant argues he is entitled to a new trial because the trial court abused its discretion when it allowed the admission of improper other-crimes evidence, and trial counsel was ineffective for failing to object to the admission of the photographs from the execution of the search warrant. Defendant further argues he is entitled to a new sentencing hearing because the trial court improperly considered a void conviction when it determined he was eligible for Class X sentencing. The State argues defendant is not entitled to a new trial but concedes this court should remand for a new sentencing hearing.

¶ 33                     A. Improper Other-Crimes Evidence

¶ 34       Defendant first argues he is entitled to a new trial because the trial court abused its discretion when it admitted improper other-crimes evidence during the testimony of Tenika Hervey and Jaci Lyle. Defendant additionally argues defendant's trial counsel was ineffective for failing to object to the admission of the photographs of Hervey's home during Inspector Meister's testimony. We disagree.

¶ 35       "The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion." *People v. Illgen*, 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519 (1991). "Such an abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful or unreasonable or where no reasonable man would take the view adopted by the trial court."

(Internal quotation marks omitted.) *Id.* (quoting *People v. M.D.*, 101 Ill.2d 73, 90, 461 N.E.2d 367, 375 (1984) (Simon, J., dissenting)).

¶ 36        "Evidence of a crime or other bad acts for which a defendant is not on trial is inadmissible if relevant merely to establish the defendant's propensity to commit crime." *People v. McGee*, 2015 IL App (1st) 122000, ¶ 25, 26 N.E.3d 529. The admission of evidence not relevant to the offense for which defendant is on trial may overpersuade the jury to convict the defendant not based on the evidence, but because he is a bad person. *People v. Richardson*, 123 Ill. 2d 322, 339, 528 N.E.2d 612, 617 (1988). However, evidence of other offenses is admissible if relevant for any purpose other than to show the propensity to commit crime, such as proving knowledge or "that the crime charged was part of a common design, scheme[,] or plan of the defendant." *People v. Kimbrough*, 138 Ill. App. 3d 481, 484-85, 485 N.E.2d 1292, 1295-96 (1985) (collecting cases). Even if relevant, the trial court should exclude other-crimes evidence if the probative value is substantially outweighed by the risk of unfair prejudice. *People v. Placek*, 184 Ill. 2d 370, 385, 704 N.E.2d 393, 400 (1998).

¶ 37                              1. *Tenika Hervey*

¶ 38        Defendant first argues the trial court improperly allowed Hervey to testify, over defendant's objection: (1) regarding defendant's pattern of purchasing drugs in Chicago and returning to Lincoln to sell them; (2) that she traveled twice with Hollins to Chicago in October 2017 and was present when he purchased cocaine and heroin and brought it back to Lincoln; and (3) that during October 2017, Hervey witnessed Hollins sell drugs at her residence on multiple occasions.

¶ 39        Here, the trial court did not abuse its discretion when it allowed the aforementioned testimony. First, Hervey's testimony regarding the pattern of purchasing drugs in

Chicago and selling them in Lincoln was highly relevant to the State's theory of the case—that at the time of the heroin transaction with Jaci Lyle, Hervey and defendant were involved in a business partnership wherein they sold drugs out of Hervey's home—and was therefore admissible, along with the description of their division of labor, to show a "common design, scheme[,] or plan." *Kimbrough*, 138 Ill. App. 3d at 485. This testimony was additionally relevant to show defendant's knowledge that Hervey was selling heroin out of her home, his intent to deliver heroin to Lyle, and to rebut any claim defendant was merely an innocent bystander to the alleged transaction in this case.

¶ 40        Defendant asserts that although "some" of this evidence may have been relevant to the charged offense, "the trial court erred in allowing all of it, because Hervey's testimony went too far." We disagree. The record shows prior to the State's case-in-chief, the trial court heard and carefully considered arguments regarding the scope and extent of Hervey's testimony. The court concluded the testimony the State sought to elicit from Hervey would not be more prejudicial than probative because it would explain "the common scheme and manner in which the transactions were being made by both Ms. Hervey and the defendant allegedly." Based on this record, the trial court's decision was not arbitrary or unreasonable.

¶ 41                                    2. *Jaci Lyle*

¶ 42        Defendant additionally argues the trial court abused its discretion when it allowed Jaci Lyle to testify she used money provided by the police to pay down a debt she had with defendant. Defendant acknowledges prior to the State's case-in-chief, defense counsel successfully argued Lyle should not be allowed to testify her debt to defendant stemmed from prior drug transactions. Defendant nonetheless argues Lyle should not have been permitted to testify regarding the debt at all, because "the nature of the debt was implicit, given that Lyle

testified she was a heroin addict who purchased it daily, and she was at Hervey's home that day to purchase heroin," and it was therefore highly prejudicial. We disagree.

¶ 43    Here, the trial court did not abuse its discretion when it allowed the aforementioned testimony. Lyle's brief reference to her debt to defendant was part of her larger narrative of the transaction at issue in this case. That information was relevant to defendant and Hervey's system of collecting payment for their drug sales and was also admissible to show Lyle's ability to identify defendant. Although some jurors may have inferred the debt was drug-related, the nature of the debt was not necessarily—as defendant argues—"implicit" from the context of the testimony, as there are a number of reasons Lyle could have owed money to defendant. Accordingly, we agree with the State that because the evidence was highly probative and the court's limiting instruction reduced the potential for unfair prejudice to defendant, the court did not abuse its discretion. See *People v. Stevenson*, 2014 IL App (4th) 130313, ¶ 55, 12 N.E.3d 179 ("A limiting instruction reduces any prejudice created by admitting other-crimes evidence.").

¶ 44                    3. *Inspector Meister*

¶ 45    Finally, defendant argues his trial counsel was ineffective for failing to object to the introduction and admission of the photographs taken from Inspector Meister's execution of the search warrant at Hervey's home. We disagree.

¶ 46    A defendant's claim of ineffective assistance of counsel is analyzed under the familiar two-pronged test announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. To prevail on an ineffective assistance claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237

Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). Deficiency is typically defined as a performance that falls below an objective standard of reasonableness. *Henderson*, 2013 IL 114040, ¶ 11. To establish the first prong, "a defendant must overcome a strong presumption that, under the circumstances, counsel's conduct might be considered sound trial strategy." *People v. Houston*, 226 Ill. 2d 135, 144, 874 N.E.2d 23, 239 (2007). A defendant demonstrates prejudice when there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the trial would have been different. *People v. Peel*, 2018 IL App (4th) 160100, ¶ 40, 115 N.E.3d 982.

¶ 47     Here, we cannot conclude defendant's trial counsel was ineffective for failing to object to the photographs of Hervey's home because that decision was not objectively unreasonable. As noted by the State, the photographs were of Hervey's home, and the introduction of those photographs could have bolstered a defense theory that Hervey was the actual seller, and defendant was either an innocent bystander or was not present on the date of the offense. Accordingly, counsel's decision not to object could have been related to a sound trial strategy.

¶ 48     Moreover, the fact the photos were taken over a month after the transaction at issue here would not have provided a basis for exclusion. Hervey testified the photos depicted the house as it appeared in October 2017. The photos of the drug paraphernalia, scales, and plastic bags were therefore relevant to show that at the time of the transaction at issue, Hervey and defendant were involved in a common scheme to sell heroin out of the home. They were also relevant to show defendant's knowledge of the presence of drugs in the home. Additionally, the photos of defendant's clothing in the yellow bags were relevant to show he periodically resided there. It is therefore unlikely the trial court would have sustained an objection to the admission of the photos on that basis.

¶ 49        Finally, even assuming *arguendo* counsel's performance was deficient, defendant

cannot establish he suffered prejudice because there is no reasonable probability the outcome of

defendant's trial would have been different had the photographs been excluded. Although Lyle

and Hervey were not the most reliable witnesses due to their criminal history and heroin

addiction, the jury was provided with a recording of the transaction at issue in this case. That

recording corroborated Lyle's testimony that she asked defendant to purchase heroin "on her

tab" and Hervey's testimony that she and defendant were involved in a business partnership

selling drugs. Their testimony was further corroborated by Inspector Meister's surveillance of

the transaction. Because defendant can establish neither deficiency nor prejudice, his claim of

ineffective assistance of counsel must fail. See *Petrenko*, 237 Ill. 2d at 497.

¶ 50                        B. Class X Sentencing

¶ 51        Defendant finally argues he is entitled to a new sentencing hearing because the

trial court improperly considered his void conviction for aggravated unlawful use of a weapon

(AUUW) in determining he was eligible for Class X sentencing. The State concedes this error

and agrees this court should vacate defendant's sentence and remand for a new sentencing

hearing. We agree with defendant and accept the State's concession.

¶ 52        Section 5-4.5-95(b) of the Unified Code (730 ILCS 5/5-4.5-95(b) (West 2016))

states that, after having twice been convicted of a Class 1 or Class 2 felony, a criminal defendant

shall be sentenced as a Class X offender. A Class X felony carries a sentence of not less than 6

and not more than 30 years in prison. *Id.* § 5-4.5-25(a). However, a conviction arising under a

statute that has been held facially unconstitutional is void *ab initio* and cannot be used to

establish a defendant's eligibility for Class X sentencing under section 5-4.5-95(b) of the Unified

Code (*id.* § 5-4.5-95(b)). See, *e.g.*, *In re N.G.*, 2018 IL 121939, ¶ 1, 115 N.E.3d 102 (holding

respondent parent's parental rights could not be terminated on the basis of depravity where one of his felony convictions was void); see also *People v. Cavette*, 2018 IL App (4th) 150910, ¶ 26, 118 N.E.3d 699 (holding the defendant's void AUUW conviction could not serve as a predicate felony conviction for armed habitual criminal). "Although the imposition of a sentence is a matter within the trial court's discretion [citation], this issue involves a question of law, and thus, we review defendant's sentence *de novo*." *People v. Chaney*, 379 Ill. App. 3d 524, 527, 884 N.E.2d 783, 786 (2008).

¶ 53        In *People v. Aguilar*, 2013 IL 112116, ¶ 22, 2 N.E.2d 321, the Illinois Supreme Court held that sections 24-1.6(a)(1), (a)(3)(A), and (d) of the Criminal Code of 2012 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2012)) were facially unconstitutional. Here, the parties agree defendant was convicted of AUUW under this statute in Cook County case No. 02-CR-0516901 and his conviction was later voided by *Aguilar*. The parties further agree the trial court considered this conviction in determining defendant was eligible for mandatory Class X sentencing. Because defendant's AUUW conviction is void, subjecting him to Class X sentencing was not authorized under section 5-4.5-95(b) of the Unified Code (725 ILCS 5/5-4.5-95(b) (West 2016)), and his sentence in this case is likewise void. See *Chaney*, 379 Ill. App. 3d at 528. Accordingly, we vacate defendant's sentence and remand for a new sentencing hearing.

¶ 54                                III. CONCLUSION

¶ 55        For the reasons stated, we affirm defendant's conviction, vacate his sentence, and remand for a new sentencing hearing.

¶ 56        Affirmed in part, vacated in part, and remanded.